[No. 65921-9-I.   Division One.   March 26, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. JAMES S. BALLEW, *Appellant*.

*James Stephen Ballew*, pro se.

*Elaine L. Winters* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Ann Marie Summers, Deputy*, for respondent.

¶1  Cox, J. — James Ballew appeals his judgment and sentence for threatening to bomb or injure property. The jury instruction that he challenges correctly stated the law regarding true threats, as required by the First Amendment. There was no violation of his constitutional right to a

unanimous jury verdict. And there was no prosecutorial misconduct during closing argument. We affirm.

¶2 In October 2009, a man, later identified as Ballew, called 911 and asked to speak with Officer Darin Beam of the Port of Seattle Police Department. Officer Beam was not on duty, and the dispatcher would not give Ballew Officer Beam's personal phone number. Ballew told the dispatcher that he would speak only to Officer Beam. Ballew then stated that he had five friends who had placed bombs in and around the Seattle-Tacoma Airport and hung up.

¶3 Authorities traced the call to Harborview Medical Center's psychiatric ward. The dispatcher also contacted Officer Beam, who identified the caller as Ballew. Several days earlier, Officer Beam spoke with Ballew at the airport when Ballew attempted to buy an airline ticket with a promissory note.

¶4 Within an hour of Ballew's call, Officer Robert Stecz, who was trained in explosives, arrived at Harborview where Ballew was involuntarily committed. After gaining Ballew's permission to speak with him, the officer interviewed Ballew in his room.

¶5 The officer asked him whether he had made the 911 call. At first, Ballew denied doing so. He then claimed he could not remember if he made the phone call.

¶6 Eventually, Ballew answered Officer Stecz's questions. He said the explosives hidden at the airport ranged from the size of a shoebox to a bar of soap. He also said the explosives could not be detected by electronic devices or trained dogs. He would not say where his friends had placed the explosives at the airport.

¶7 Ballew also told Officer Stecz that he was in the Air Force for 53 years and that he had "cosmic [security] clearance," which, according to Ballew, was much higher than top secret clearance. Based on this interview, Officer Stecz determined that Ballew's threat was not credible.

¶8 The State charged Ballew with one count of a threat to bomb or injure property based on RCW 9.61.160. At his jury trial, Ballew did not raise an insanity defense. Moreover, he did not testify. But he argued, based on his mental health status, that a reasonable person would not have considered his statements to be true threats. The jury convicted Ballew as charged.

¶9 The trial court sentenced Ballew to nine months confinement. With credit for time served, he was released.

¶10 Ballew appeals.

## JURY INSTRUCTION

¶11 For the first time on appeal, Ballew argues that the trial court violated his First Amendment rights by incorrectly defining "true threat" in the jury instruction. We disagree.

¶12 Instructional errors based on legal rulings are reviewed de novo, as are constitutional questions.[1] We engage in an independent review of the record in First Amendment cases to ensure that the judgment is not based on a forbidden intrusion on the field of free expression.[2]

¶13 The First Amendment, which is applicable to the states through the Fourteenth Amendment, states that "Congress shall make no law . . . abridging the freedom of speech."[3] While the First Amendment's scope is broad, it does not extend to " 'unprotected speech.' "[4]

---

[1] *State v. Schaler*, 169 Wn.2d 274, 282, 236 P.3d 858 (2010) (citing *State v. Grande*, 164 Wn.2d 135, 140, 187 P.3d 248 (2008); *State v. Brett*, 126 Wn.2d 136, 171, 892 P.2d 29 (1995)).

[2] *Id.* (quoting *State v. Kilburn*, 151 Wn.2d 36, 49-50, 84 P.3d 1215 (2004) (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 508, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984))).

[3] *Id.* at 283 (quoting *Virginia v. Black*, 538 U.S. 343, 358, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003)).

[4] *Id.* (quoting *Kilburn*, 151 Wn.2d at 42-43).

¶14 "True threats" are an unprotected category of speech.[5] "A true threat is 'a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'"[6] The State has a significant interest in restricting speech that communicates a true threat, in order to protect "'"individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur."'"[7] The speaker of a "true threat" need not actually intend to carry out the threat.[8] Instead, it is enough that a reasonable speaker would foresee that the threat would be considered serious.[9]

¶15 Only "true" threats may be proscribed.[10] "The First Amendment prohibits the State from criminalizing communications that bear the wording of threats but which are in fact merely jokes, idle talk, or hyperbole."[11] The supreme court has held that the bomb threat statute, RCW 9.61.160, can reach only "true threats."[12]

¶16 Here, the court provided instruction 8 to the jury:

> A person commits the crime of threatening to bomb or injure property when he or she threatens to bomb or otherwise injure any government property, or any other building or structure, or any place used for human occupancy, or when he or she communicates or repeats any information concerning such

---

[5] *Id.* (citing *Kilburn*, 151 Wn.2d at 43).

[6] *Id.* (quoting *Kilburn*, 151 Wn.2d at 43).

[7] *Id.* (quoting *Kilburn*, 151 Wn.2d at 43 (quoting *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001))).

[8] *Id.* (citing *Kilburn*, 151 Wn.2d at 46).

[9] *Id.*

[10] *Id.*

[11] *Id.* (citing *Kilburn*, 151 Wn.2d at 43).

[12] *Id.* at 283-84 (citing *State v. Johnston*, 156 Wn.2d 355, 364, 127 P.3d 707 (2006)).

threatened bombing or injury, knowing such information to be false and with intent to alarm the person or persons to whom the information is communicated or repeated.

> ***To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat.***[13]

Ballew did not object either to this language or to the absence of additional language that he now claims should have been included in this instruction. Specifically, Ballew now argues that the United States Supreme Court's decision in *Virginia v. Black*[14] requires a subjective test when evaluating a true threat.

¶17 In *Black*, the United States Supreme Court defined a "true threat" as a statement "where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals."[15] Ballew claims that the jury could have convicted him for statements protected under *Black* because the above wording of the court's instruction required the jury to apply only an objective test.

¶18 "An appellate court may refuse to address a claim of error not raised in the trial court unless it finds a 'manifest error affecting a constitutional right.' "[16] An error is "manifest" if it had practical and identifiable consequences in the case.[17]

¶19 Here, the State does not contest Ballew's assertion that the statement of what constitutes a true threat in this instruction would be a manifest error affecting a constitu-

---

[13] Clerk's Papers at 38 (emphasis added).

[14] 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003).

[15] *Id.* at 359.

[16] *Schaler*, 169 Wn.2d at 282 (quoting RAP 2.5 (a)(3)).

[17] *Id.* at 282-83.

tional right if it were a misstatement of the law.[18] Rather, the State argues that the language is a correct statement of the law. We agree with the State.

¶20 Washington uses an objective true threat test. In *State v. Kilburn*,[19] the supreme court stated that "[w]e have adopted an objective test of what constitutes a 'true threat' " based upon how a reasonable person would foresee the statement would be interpreted. In *State v. Johnston*,[20] the supreme court affirmed this rule, explaining that Washington has adopted an objective standard for determining what constitutes a true threat.

¶21 Most recently, in *State v. Schaler*,[21] the supreme court again defined true threat using an objective, not a subjective, test. It stated:

> A true threat is "a statement made in a context or under such circumstances wherein a ***reasonable person*** would foresee that the statement would be interpreted as a serious expression of intention to inflict bodily harm upon or to take the life of another person."[22]

¶22 Here, the true threat instruction properly used an objective test. This is entirely consistent with the test the supreme court has repeatedly held is controlling.

¶23 Moreover, in *Schaler*, the court expressly noted its approval of Washington Pattern Instruction Criminal (WPIC) 2.24,[23] as amended in 2008 and on which instruction 8 is based, as incorporating "the constitutional mens rea" requir-

---

[18] Brief of Appellant at 20 (citing *Schaler*, 169 Wn.2d at 282-88).

[19] 151 Wn.2d 36, 43, 84 P.3d 1215 (2004).

[20] 156 Wn.2d 355, 360-61, 127 P.3d 707 (2006) (quoting *United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990) and citing *Kilburn*, 151 Wn.2d at 43)).

[21] 169 Wn.2d 274, 236 P.3d 858 (2010).

[22] *Id.* at 283 (emphasis added) (quoting *Kilburn*, 151 Wn.2d at 43).

[23] 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 71-74 (3d ed. 2008) (WPIC).

ed to safeguard First Amendment protections.[24] As *Schaler* also clarifies, the controlling mens rea is simple negligence, the reasonable person standard, nothing more.[25]

¶24 Ballew correctly argues that the supreme court's statement in *Schaler* approving WPIC 2.24 is dictum. But that does not make it wrong.

¶25 *Kilburn* and *Schaler* are controlling with respect to the use of the objective standard. *Schaler* observes that the current version of WPIC 2.24 correctly formulates a jury instruction meeting that standard. Accordingly, we reject Ballew's challenge to this jury instruction.

¶26 At oral argument, Ballew argued that the instruction given was improper because it omitted the clause "in the position of the speaker," which is included in WPIC 2.24.[26] In *Schaler*, the supreme court noted that while the practical difference between a speaker-centric and a hearer-centric standard is not meaningful in many cases, such a determination is fact specific.[27]

¶27 Here, assuming without deciding that the trial court's failure to include the omitted language was error, any such error was harmless. The evidence presented at trial showed that Ballew deliberately called 911. He then threatened to bomb the airport when the dispatcher refused to release Officer Beam's contact information to him. Then, during his later interview with Officer Stecz, Ballew again offered to disclose the locations of the bombs, but only to Officer Beam. Based on this evidence, a reasonable trier of

---

[24] *Id.* at 288 n.5.

[25] *Id.* at 287.

[26] WPIC 2.24, at 72 ("To be a threat, a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in [*jest or idle talk*] [*jest, idle talk, or political argument*]." (emphasis added) (alterations in original)).

[27] *Schaler*, 169 Wn.2d at 290 n.7 ("While the [difference between the speaker-centric and hearer-centric] standards may yield no meaningful difference in many cases, in this case the difference is not academic.").

fact could have found that Ballew intentionally made the threats to alarm the receivers and gain access to Officer Beam.

¶28 Ballew argues that *Black* requires a different result because it requires a subjective test when evaluating a true threat. We disagree.

¶29 In that case, the United States Supreme Court considered the constitutionality of a Virginia statute that criminalized burning a cross with the intent to intimidate.[28] The statute was invalidated on First Amendment grounds.[29]

¶30 Ballew relies on the following excerpt from Justice O'Connor's lead opinion, joined by a majority of the court, which defined "true threat" as follows:

> "True threats" encompass those statements where *the speaker means* to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals. The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats "protect[s] individuals from the fear of violence" and "from the disruption that fear engenders," in addition to protecting people "from the possibility that the threatened violence will occur." *Intimidation in the constitutionally proscribable sense of the word is a type of true threat*, where a speaker directs a threat to a person or group of persons with the intent of placing the victim in fear of bodily harm or death.[30]

¶31 Ballew argues that this language requires a subjective, speaker-based true threat analysis, rather than an objective test. But, as noted by the *Schaler* court,[31] *Black* is

---

[28] *Black*, 538 U.S. at 347-48.

[29] *Id.*

[30] *Id.* at 359-60 (emphasis added) (alteration in original) (citations omitted) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)).

[31] *Schaler*, 169 Wn.2d at 287 n.4.

distinguishable because the statute at issue there required the speaker to intimidate the listener, which necessitates a greater mens rea than simply putting the listener in fear.[32] Here, because the State was not required to prove that Ballew meant to intimidate the listeners, *Black* does not support Ballew's argument.

¶32 We also note that the federal circuit courts are split regarding the effect of *Black*'s "true threat" definition.[33] We are not bound by these circuit courts,[34] and the United States Supreme Court has not chosen to resolve this conflict within the circuits. Therefore, we continue to follow the law, as stated by our state supreme court.[35]

---

[32] *Black*, 538 U.S. at 360.

[33] *See United States v. Mabie*, 663 F.3d 322, 332-33 (8th Cir. 2011) (objective test only); *United States v. Beale*, 620 F.3d 856, 865 (8th Cir. 2010), *cert. denied*, 131 S. Ct. 1023 (2011) (objective test only); *United States v. Jongewaard*, 567 F.3d 336, 339 n.2 (8th Cir. 2009), *cert. denied*, 559 U.S. 941 (2010) (objective test only); *Riehm v. Engelking*, 538 F.3d 952, 963 (8th Cir. 2008) (objective test); *United States v. Armel*, 585 F.3d 182, 185 (4th Cir. 2009) (objective test only); *United States v. Zavrel*, 384 F.3d 130, 136 (3d Cir. 2004), *cert. denied*, 544 U.S. 979 (2005) (objective test only); *United States v. Romo*, 413 F.3d 1044, 1051 n.6 (9th Cir. 2005), *cert. denied*, 547 U.S. 1048 (2006) (subjective test not required). *But see Porter v. Ascension Parish Sch. Bd.*, 393 F.3d 608, 616-17 (5th Cir. 2004), *cert. denied*, 544 U.S. 1062 (2005) (*Black* requires the speaker only to knowingly make the statement, not to intend it as a threat); *United States v. Magleby*, 420 F.3d 1136, 1139 (10th Cir. 2005), *cert. denied*, 547 U.S. 1097 (2006) (subjective test supported by *Black*, but First Amendment challenge not reached because the claim was procedurally barred); *United States v. Parr*, 545 F.3d 491, 500 (7th Cir. 2008), *cert. denied*, 556 U.S. 1181 (2009) (declining to decide the issue but noting that it is more likely that an entirely objective definition of "true threat" is no longer tenable); *United States v. Cassel*, 408 F.3d 622, 631 (9th Cir. 2005) (subjective test required); *United States v. Stewart*, 420 F.3d 1007, 1018 (9th Cir. 2005) (an objective test is consistent with *Black*, but the statement was a true threat under both tests); *Fogel v. Collins*, 531 F.3d 824, 831 (9th Cir. 2008) (the statement was a true threat under both tests); *United States v. Bagdasarian*, 652 F.3d 1113, 1117 n.14 (9th Cir. 2011) (subjective test required).

[34] *Lundborg v. Keystone Shipping Co.*, 138 Wn.2d 658, 677, 981 P.2d 854 (1999).

[35] *1000 Virginia Ltd. P'ship v. Vertecs Corp.*, 158 Wn.2d 566, 578, 146 P.3d 423 (2006) (a Washington Supreme Court decision is binding on all lower courts in the state and the court of appeals errs when it fails to follow directly controlling authority) (citing *Fondren v. Klickitat County*, 79 Wn. App. 850, 856, 905 P.2d 928 (1995)).

¶33 Ballew argues that *Schaler* and *State v. Soboroff*[36] require reversal. They do not.

¶34 In *Schaler*, the defendant was convicted of harassment for making threats to kill his neighbors.[37] The threats were made to mental health professionals during a mental health evaluation.[38] The trial court did not define "true threat" for the jury.[39] The supreme court reversed the conviction, holding that the omission of the definition was constitutional error that was not harmless.[40] Because a correct true threat instruction was given in this case, *Schaler* does not support reversal of this conviction. In fact, as we explained earlier in this opinion, *Schaler* approves of the WPIC on which the jury instruction given in this case was based.

¶35 In *Soboroff*, the Iowa Supreme Court reversed Soboroff's conviction for threatening to contaminate the city's water supply because defense counsel did not request a jury instruction defining "true threat."[41] We are not bound by the Iowa Supreme Court. In any event, unlike *Soboroff*, Ballew did receive a true threat instruction.

¶36 Ballew argues for the first time on appeal that the true threat portion of instruction 8 violated his First Amendment rights because it failed to inform the jury that idle talk and jokes are not true threats. He did not object to this omission below.

¶37 Whether this claim is a manifest error affecting a constitutional right within RAP 2.5(a) is a threshold issue. An error is manifest if it had practical and identifi-

---

[36] 798 N.W.2d 1 (Iowa 2011).

[37] *Schaler*, 169 Wn.2d at 281-82.

[38] *Id.* at 289.

[39] *Id.* at 290.

[40] *Id.*

[41] *Soboroff*, 798 N.W.2d at 2.

able consequences in the case.[42] This standard is also referred to as "actual prejudice."[43] As our supreme court explained in *State v. O'Hara*:[44]

> [T]he focus of the actual prejudice [analysis] must be on whether the error is so obvious on the record that the error warrants appellate review. . . . Thus, to determine whether an error is practical and identifiable, the appellate court must place itself in the shoes of the trial court to ascertain whether, given what the trial court knew at that time, the court could have corrected the error.[45]

This analysis is distinct from the harmless error analysis.[46]

¶38 Ballew fails to show actual prejudice here. There is no evidence in the record that Ballew's statements were idle talk or jokes. Although he claims that his involuntary commitment in a locked hospital psychiatric wing would have permitted a jury to reasonably conclude that his speech was idle talk or hyperbole, that line of reasoning is unpersuasive. Thus, had this argument been brought to the attention of the trial court below, the court could have properly declined to add the additional language to the instruction. In sum, there is no showing of actual prejudice by the omission of this language.[47] Therefore, we do not address this argument any further.[48]

---

[42] *Schaler*, 169 Wn.2d at 284 (citing *State v. O'Hara*, 167 Wn.2d 91, 99, 217 P.3d 756 (2009)).

[43] *Id.*

[44] 167 Wn.2d 91, 217 P.3d 756 (2009).

[45] *Id.* at 99-100.

[46] *Schaler*, 169 Wn.2d at 284 (citing *O'Hara*, 167 Wn.2d at 98).

[47] *See* RAP 10.3(a)(5) (parties are required to support their arguments with citations to legal authority and references to relevant parts of the record).

[48] *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (arguments not supported by legal authority or the record need not be considered).

¶39 The balance of this opinion has no precedential value. Accordingly, under RCW 2.06.040, it shall not be published.

BECKER and APPELWICK, JJ., concur.

Review denied at 175 Wn.2d 1019 (2012).