[No. 66549-9-I.   Division One.   August 27, 2012.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY LEE DYE, *Appellant*.

*Lila J. Silverstein* and *Jan Trasen* (of *Washington Appellate Project*), for appellant.

*Daniel T. Satterberg, Prosecuting Attorney*, and *Andrea R. Vitalich, Deputy*, for respondent.

¶1 ELLINGTON, J. — Timothy Dye's right to a fair trial was not violated when the court allowed Ellie, the King County Prosecutor's Office "facility dog," to sit next to the developmentally disabled adult victim as he testified. Nor did the court improperly seat an alternate juror without first verifying the alternate's impartiality. We find no error and affirm Dye's conviction for residential burglary.

## BACKGROUND

¶2 Douglas Lare is an adult man with significant developmental disabilities.[1] Although he lives independently and has a job, he functions at the level of a child.

¶3 In 2006 or 2007, Lare met Alesha Lair, who eventually became his "girlfriend."[2] Alesha, her sister, her mother, and her mother's boyfriend moved into Lare's apartment in the spring of 2007. Alesha used Lare's money and credit to buy numerous items, including a car. She convinced Lare to take $59,000 from his retirement account. She opened several credit cards in Lare's name and charged the maximum on each, incurring approximately $42,000 in credit card debt.[3] Alesha's mother and her boyfriend moved out of

---

[1] Lare has an intelligence quotient of approximately 65, cerebral palsy, and a degenerative joint condition. He is unable to manage his finances and requires a payee service to pay his bills.

[2] Report of Proceedings (RP) (Dec. 1, 2010) at 14.

[3] Lare testified the only thing he bought for himself during this time was a coat "when I was cold." *Id.* at 27.

Lare's apartment in the fall of 2007, and Alesha moved out shortly afterward.[4]

¶4 Unbeknownst to Lare, Alesha had another boyfriend named Timothy Dye. After she moved out, Alesha rented an apartment for Dye and herself, which she furnished with Lare's money.

¶5 Lare discovered that a portable DVD (digital video disk) player and a DVD were missing from his bedroom. Several days later, on January 24, 2008, Lare awoke to find Dye in his home, rummaging through his belongings. Dye asked if he could take Lare's DVD player and VCR (video-cassette recorder). Lare said no. Dye nonetheless took DVDs and a shelving unit. Lare reported both incidents to the police.

¶6 The next day, Lare returned from work to find his front door propped open. Several items had been stolen from his apartment, including a large television, a VCR, a DVD player, a microwave, and a collectible "bulldog" knife. He reported this to the police as well. Lare became very fearful. He testified he now has three locks on his front door and sleeps with mace, a frying pan, and two knives.

¶7 The State charged Dye with residential burglary and alleged that Lare was a particularly vulnerable victim. Alesha pleaded guilty to theft in the first degree with a vulnerable victim aggravator.

¶8 Before Dye's trial, the State sought permission for a dog named Ellie to sit with Lare during his testimony. Ellie is the King County Prosecutor's Office facility dog.[5] The court granted the motion over Dye's objection. The court instructed the jury to disregard the dog's presence.

¶9 Shortly after the jury began its deliberations, defense counsel notified the court that Dye had had inadvertent

---

[4] They moved after Alesha's mother's boyfriend assaulted Lare and broke his glasses during an argument about the use of the car.

[5] In their briefing, the parties variously refer to Ellie as a "service dog" or a "comfort dog." At argument before this court, the prosecutor clarified that Ellie is the office "facility dog." We adopt that term.

contact with one of the jurors during trial. The court replaced the juror with the alternate, who had been instructed not to discuss the case before being briefly excused, and instructed the jury to begin deliberations anew.

¶10 The jury found Dye guilty of residential burglary, but answered "no" on the special verdict for the vulnerable victim aggravator.

## DISCUSSION

### *Presence of Facility Dog During Testimony*

¶11 In a pretrial motion, the State represented that Lare "is experiencing significant anxiety regarding his upcoming testimony," which diminished when Lare was with Ellie, and therefore "requested that Ellie be with him during his testimony."[6] The State relied upon the court's discretion to control courtroom proceedings and witness examination under ER 611, and upon *State v. Hakimi*, in which we upheld a trial court's decision to allow child victims of sexual abuse to hold dolls while testifying.[7] "Similarly here, because Douglas functions at the level of a child and is fearful of the defendant, the State asks that he be allowed to have the dog present."[8]

¶12 The defense objected, contending the dog would distract the jury, aggravate Dye's allergies, and cause extreme prejudice. The court offered to make any appropriate accommodations for the allergies but granted the State's motion.

¶13 Dye contends that Ellie's presence deprived him of a fair trial by interfering with his right to confront Lare, by improperly inciting the jury's sympathy and encouraging the jury to infer Lare's victimhood, and by giving Lare an

---

[6] Clerk's Papers at 104.

[7] 124 Wn. App. 15, 98 P.3d 809 (2004).

[8] Clerk's Papers at 104.

incentive to testify in the prosecution's favor. Additionally, Dye contends there was no proper foundation for the request and that the court violated GR 33 by allowing Lare to sit with a facility dog without making necessary findings for accommodation under GR 33; the Americans with Disabilities Act, 42 U.S.C. chapter 126; or the Washington Law Against Discrimination, chapter 49.60 RCW.

■■ ¶14 We address the last arguments first. GR 33 and the antidiscrimination statutes to which Dye refers have no application here. GR 33 establishes a procedure by which persons with disabilities may request accommodation as mandated by the statutes. No request was made under GR 33, Dye's objection was not made on that basis, and the rule does not establish an exclusive, mandatory procedure. Further, GR 33 requires findings only when a requested accommodation is denied.[9]

¶15 For his argument that Ellie's presence interfered with his right to cross-examine Lare, Dye relies on *Coy v. Iowa*, in which the United States Supreme Court held that a screen placed between the defendant and the complaining witnesses interfered with the defendant's Sixth Amendment right to "face-to-face confrontation."[10] *Coy* emphasized the special character of the right to literal face-to-face confrontation, and distinguished it from the right to conduct cross-examination.[11] The court noted that while that right is "not absolute, and may give way to other important interests," the absence of "individualized findings that these particular witnesses needed special protection" precluded the conclusion that an exception was appropriate.[12] Dye contends the court's failure to make a finding of

---

[9] GR 33(e).

[10] 487 U.S. 1012, 1021-22, 108 S. Ct. 2798, 101 L. Ed. 2d 857 (1998). The court specifically declined to address Coy's due process claim. *Id.* at 1022.

[11] *Id.* at 1015-20.

[12] *Id.* at 1020-21.

necessity in this case similarly violated his right to a fair trial.

¶16 We disagree. Dye's argument depends on the notion that Ellie effectively screened Lare from Dye. But Dye does not allege the dog's presence prevented him from face-to-face confrontation with Lare. *Coy* is inapposite.

¶17 Dye also suggests Ellie's presence "foiled" the "mission" of cross-examination, invaded the jury's province, and undermined the presumption of innocence.[13] He argues the dog's presence "presuppos[ed] to the jury the very victimhood of the complainant."[14] And because dogs react to human stress,[15] he suggests the jury was "free to interpret the dog's signals as testimony from an unsworn witness that the victim is upset because he or she is telling the truth."[16]

¶18 Again, we disagree. The confrontation clause is normally satisfied "if defense counsel receives wide latitude at trial to question witnesses."[17] The defense engaged in a lengthy and thorough cross-examination of Lare,[18] highlighting his memory problems and eliciting several inconsistent statements.[19] There is no indication that the dog compromised Dye's right of cross-examination.

¶19 Dye also contends that Lare may have been biased or more suggestible because Ellie belonged to the prosecutor's office. He argues this created "the sense that the State

[13] Appellant's Br. at 11.

[14] *Id.*

[15] *See, e.g.*, William Glaberson, *By Helping a Girl Testify at a Rape Trial, a Dog Ignites a Legal Debate*, N.Y. Times, Aug. 9, 2011, at A15.

[16] Appellant's Br. at 10.

[17] *Pennsylvania v. Ritchie*, 480 U.S. 39, 53, 107 S. Ct. 989, 94 L. Ed. 2d 40 (1987).

[18] *See* RP (Dec. 1, 2010) at 42-120.

[19] *See, e.g.*, RP (Dec. 6, 2010) at 103-04 ("What evidence do we have? We have Mr. Lare, whose memory is, as counsel conceded, which is pretty obvious[,] far from perfect."); RP (Dec. 6, 2010) at 109-11; 114-15 ("Mr. Lare's story had changed a lot.").

had orchestrated the appearance of Ellie . . . in order to engender sympathy for the complainant."[20]

¶20 Dye relies on *State v. Aponte*.[21] There, the Connecticut Supreme Court held the prosecutor committed misconduct by giving a child witness a stuffed dinosaur to hold during her testimony. Aponte acknowledged that "had the victim simply brought a favorite object from home, there would have been no basis for objection."[22] The court held that the misconduct was compounded when the trial court refused to permit cross-examination to explore the child's possible bias or suggestibility, and the combination of the misconduct and the restriction on the defendant's ability to expose the witness's suggestibility deprived the defendant of due process.[23]

¶21 In this case, the prosecutor did not give Lare a gift and there is no allegation of misconduct. Further, even if Ellie's temporary companionship were sufficient to create bias or suggestibility, Dye does not allege any restriction on his ability to expose the same during cross-examination. *Aponte* is inapposite.

¶22 Finally, Dye argues that by failing to make specific findings weighing Lare's need for emotional support against the possibility of prejudice, the court violated his right to due process. Because of Lare's developmental disabilities, both parties analogize to cases involving child witnesses. These cases provide abundant authority that a court may allow a child witness to hold a comfort item during testimony where the witness's need for emotional support outweighs the possibility of prejudice.[24]

---

[20] Appellant's Br. at 12.

[21] 249 Conn. 735, 738 A.2d 117 (1999).

[22] *Id.* at 745.

[23] *Id.* at 748.

[24] *See, e.g., Hakimi*, 124 Wn. App. at 21 (court did not err by allowing nine-year-old victims to hold dolls during testimony in sexual abuse trial when the judge "weighed the interests of Hakimi's two victims [against] any potential

¶23 Here, the necessary balancing is implicit in the court's ruling. The court did not think Ellie would distract the jury, and observed that the dog was "very unobtrusive [and] will just simply be next to the individual, not be laying in his lap."[25] Given Lare's disabilities and "significant emotional trauma," the court concluded Ellie's presence was appropriate.[26] Dye's only other specific objection was with respect to his dog allergy, which the court promised to accommodate. There was no error.

¶24 In any event, there was no prejudice. The court instructed the jury not to "make any assumptions or draw any conclusions based on the presence of this service dog."[27] Juries are presumed to follow the court's instructions absent evidence to the contrary.[28] And the jury did not find that Lare was a vulnerable victim.

---

prejudice to Hakimi"); *State v. Cliff*, 116 Idaho 921, 924, 782 P.2d 44 (1989) ("In cases, such as this, where it is necessary to receive testimony from young children, the court must strike a balance between the defendant's right to a fair trial and the witnesses' need for an environment in which he or she will not be intimidated into silence or to tears."); *State v. Dickson*, 337 S.W.3d 733, 743-44 (Mo. Ct. App. 2011) (court did not abuse discretion by allowing child victim to hold comfort item after balancing benefit against potential prejudice); *State v. Powell*, 318 S.W.3d 297, 304 (Mo. Ct. App. 2010) ("We . . . emphasize that trial courts must be cognizant of the possibility that comfort items or other accommodations for minors may unfairly engender sympathy for complaining witnesses. When an objection is raised, courts should require some explanation of the need for such items, particularly when the items will be used during the testimony of teenage children. Nevertheless, in this case, we conclude that the trial court properly weighed the impact of the teddy bears on the witnesses and the jury."); *State v. Marquez*, 124 N.M. 409, 413, 951 P.2d 1070 (1997) (not error to allow 12-year-old victim of sexual assault to hold teddy bear while testifying when court "properly balanced" her need against possibility of prejudice); *see also* Marianne Dellinger, *Using Dogs for Emotional Support of Testifying Victims of Crime*, 15 ANIMAL L. 171, 172, 185 (2009) (advocating use of dogs "only in cases where the witness can demonstrate a truly compelling need for the emotional support and only where the proper balancing with the defendants' rights is performed").

[25] RP (Nov. 18, 2010) at 29.

[26] *Id.*

[27] Clerk's Papers at 53.

[28] *State v. Kirkman*, 159 Wn.2d 918, 928, 155 P.3d 125 (2007).

## Alternate Juror

¶25 After closing arguments, the court excused the alternate juror, juror 6. The court admonished juror 6 to abide by the instructions not to discuss the case with anyone and warned him that he might be recalled if any of the jurors could not continue. A few minutes after the jury began to deliberate, the court learned that Dye had had inadvertent contact with a juror during the trial. The juror was immediately excused, and the alternate juror was recalled for the following day. The court instructed the jury to begin deliberations anew.

¶26 Dye contends the trial court violated his right to an impartial jury by seating an alternate juror without first verifying on the record that he remained impartial. We addressed an identical argument in *State v. Chirinos*.[29] The governing court rule, CrR 6.5, does not require the court to conduct a hearing before replacing a deliberating juror with an alternate. Rather, the court has discretion to do so when the court deems it necessary to ensure the alternate juror has remained impartial.[30] Juror 6 received the usual caution given to alternate jurors. As in *Chirinos*, there was no indication that juror 6 had become biased during his brief absence. The court was no more obliged to question him than to question the jurors who had returned to deliberate after being excused for the evening.[31]

## Vulnerable Victim Allegation

¶27 Dye next contends the court commented on the evidence when it gave pattern instructions on the "vulner-

---

[29] 161 Wn. App. 844, 255 P.3d 809, *review denied*, 172 Wn.2d 1021, 268 P.3d 224 (2011).

[30] *Id.* at 848-49.

[31] *Id.* at 850.

able victim" aggravating circumstance.[32] But he did not object to the instruction below. Accordingly, we address it only if it represents a manifest error affecting a constitutional right.[33] "An error is 'manifest' if it had practical and identifiable consequences in the case."[34]

¶28 Simply put, Dye cannot show that the instructions constituted a manifest constitutional error because the jury rejected the vulnerable victim aggravating factor. Therefore, we decline to reach the issue.

¶29 Affirmed.

BECKER and SCHINDLER, JJ., concur.

Review granted at 176 Wn.2d 1011 (2013).

---

[32] The court instructed the jury as follows: "If you find the defendant guilty of residential burglary as charged, then you must determine if the following aggravating circumstance exists: Whether the defendant knew or should have known that the victim was more vulnerable to the commission of the crime than the typical victim of residential burglary and that the victim's vulnerability was a substantial factor in the commission of the crime." Clerk's Papers at 59. The court further instructed, "A victim is 'particularly vulnerable' if he or she is more vulnerable to the commission of the crime than the typical victim of residential burglary. The victim's vulnerability must also be a substantial factor in the commission of the crime." Clerk's Papers at 60.

[33] RAP 2.5(a); *State v. Ballew*, 167 Wn. App. 359, 365, 272 P.3d 925 (2012).

[34] *Ballew*, 167 Wn. App. at 365.