**FILED**
**February 6, 2018**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | |
| | ) | No. 34576-9-III |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| ERIC ANDREW ANDERSON, | ) | |
| | ) | |
| Appellant. | ) | |

SIDDOWAY, J. — Eric Anderson appeals his convictions for possession of a stolen

motor vehicle, two counts of second degree vehicle prowling, and making a false or

misleading statement to a public servant. He alleges two instances of ineffective

assistance of counsel. Because deficient performance is not shown as to the first instance

and prejudice is not shown as to the second, we affirm.

FACTS AND PROCEDURAL BACKGROUND

Very early on Christmas morning 2015, Eric Anderson was arrested and charged

with some of the crimes whose convictions he appeals. At around 1:30 a.m., Yakima

Police Officer Philip Amici saw a Toyota Highlander roll through a stop sign. It had defective tail lights, so the officer was about to initiate a stop when the Highlander suddenly pulled away at a high rate of speed. Fresh snow and ice prevented the officer from keeping up. He radioed for assistance and before long, another officer located the Highlander parked in the middle of a roadway, still running, with no one inside. Dispatch soon radioed that the license plate reported was that of a stolen vehicle.

Mr. Anderson was found in a nearby carport by Sergeant Ira Cavin and the two were soon joined by Officer Casey Gillette. Mr. Anderson identified himself to the officers as "Michael A. Anderson" and told them he was in the area to visit a friend who lived in an adjacent duplex. Upon first being encountered by Sergeant Cavin, Mr. Anderson told the sergeant he had just seen someone jump a nearby fence. Sergeant Cavin left Mr. Anderson with Officer Gillette to see what might or might not be in the area where Mr. Anderson claimed to have seen someone.

While awaiting whatever Sergeant Cavin might discover, Officer Gillette asked Mr. Anderson for his birthdate, which Mr. Anderson gave as February 3, 1986. After Sergeant Cavin radioed Officer Gillette about footprints in the snow he had traced from the carport to the abandoned Highlander and the two officers concluded that the tread of Mr. Anderson's shoe appeared to be a match, Officer Gillette told Mr. Anderson he was detaining him for possession of a stolen vehicle. Officer Gillette placed Mr. Anderson in the back seat of his patrol car. The officer then used his mobile data terminal to search

for a Department of Licensing picture of Michael Anderson, date of birth February 3, 1986, and it proved not to be a match for the person he had detained. Running the name came back with a "near hit" who was subject to outstanding warrants, however: "Eric Anderson," who reportedly used "Michael Anderson" as an alias. Verbatim Report of Proceedings (VRP) at 67. Officer Gillette checked for Eric Anderson's mug shot, which was a match for the person he had detained. When confronted, Mr. Anderson admitted to Officer Gillette that he lied because he had a warrant outstanding.

Officer Gillette placed Mr. Anderson under arrest for two outstanding warrants and for lying about his name and birthdate. Mr. Anderson was charged in an initial information with possession of a stolen motor vehicle and making a false statement to a public servant. After property found in the Highlander proved to have been stolen from vehicles near where Officer Amici first sighted the Highlander, the charges were amended to include two counts of second degree vehicle prowling.

A CrR 3.5 hearing was held to determine whether Mr. Anderson's admission to Officer Gillette that he lied about his name and birthdate would be admissible. The trial court ruled it would be, since the statement was volunteered. But the trial court expressed concern about the prejudice associated with mentioning Mr. Anderson's outstanding warrant. Defense counsel agreed that reference to any outstanding warrants would be "highly prejudicial." VRP at 30. The trial court ruled that while relevant, the

3

existence of the warrant was unduly prejudicial and evidence of the warrant should not be

offered.

Nevertheless, at trial Officer Gillette mentioned the excluded evidence during his

direct examination:

> Q. Did you detain Mr. Anderson?
> A. Yes, sir, I did.
> Q. Tell us about that?
> A. I detained him, placed him in the back seat of my car. At that point I did some further investigation on his name. I ran it through our computer.
> Q. How did you run it through the computer?
> A. I looked up Michael A. Anderson myself. I was able to view a photo of Michael Anderson, and I observed the photo not to match the gentleman that was in the back seat of the car.
> Q. What did you do as a result of that?
> A. When I ran Michael Anderson's name, *it came back with a near hit of a warrant for an Eric Anderson*, 12-21-1987. I ran his name, and I was able to observe a photo. It matched the gentleman that was seated in the back seat of my car.

VRP at 66-67 (emphasis added). Defense counsel did not object nor did he later move

for a mistrial for a violation of the court's in limine ruling.

A jury instruction conference was conducted before the State completed

presenting its evidence. Among the instructions proposed by both parties was the pattern

limiting instruction used when a defendant testifies and is subject to impeachment with

prior crimes. The proposed instruction, jury instruction 5, stated,

4

You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony and for no other purpose.

VRP at 188; Clerk's Papers (CP) at 46; 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 5.05 (4th ed. 2016). At the time of the instruction conference, Mr. Anderson's trial lawyer did not object to the jointly-proposed instruction.

Mr. Anderson decided not to testify at trial. When the trial court made its final inquiry as to whether he would, which occurred the day after the jury instruction conference, Mr. Anderson stated: "Well, I try to weigh the positives and negatives on that. I mean, I want to so bad. It's hard not saying anything, but I think it might hurt me more than benefit me, your Honor." VRP at 180. Mr. Anderson's lawyer did not ask the court to withdraw jury instruction 5 at that point. Before the defense formally rested, the trial court, "[o]ut of an abundance of caution," asked the lawyers to review the final packet of jury instructions again, which still included instruction 5. VRP at 181. Mr. Anderson's lawyer had no objections. The instructions, including instruction 5, were read to the jury.

The jury found Mr. Anderson guilty on all counts. The trial court sentenced Mr. Anderson to 55 months' incarceration. Mr. Anderson appeals.

ANALYSIS

Mr. Anderson contends he received ineffective assistance of counsel at two points in his trial. The first is when his lawyer failed to object or move for a mistrial after Officer Gillette testified to receiving "a near hit of a warrant for an Eric Anderson," VRP at 67, violating the court's ruling. The second is when his trial lawyer did not withdraw or object to the giving of jury instruction 5. Ineffective assistance of counsel is a manifest error affecting a constitutional right that can be raised for the first time on appeal. RAP 2.5(a)(3); *State v. Brown*, 159 Wn. App. 1, 17, 248 P.3d 518 (2010).

Effective assistance of counsel is guaranteed by both the Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution. *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Mierz*, 127 Wn.2d 460, 471, 901 P.2d 286 (1995). To demonstrate ineffective assistance of counsel, a defendant must show two things: "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995) (citing *State v. Thomas*, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987)). When a claim can be

disposed of on one ground, this court need not consider both. *Strickland*, 466 U.S. at

697.

Washington courts strongly presume counsel's performance was reasonable. *State

v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011); *McFarland*, 127 Wn.2d at 335.

Deficient performance is not shown where a lawyer's actions can be explained as

legitimate trial strategy. *Grier*, 171 Wn.2d at 33. A claim of ineffective assistance of

counsel presents a mixed question of law and fact, which this court reviews de novo.

*State v. Cross*, 156 Wn.2d 580, 605, 132 P.3d 80 (2006).

*Violation of the in limine ruling*

When it comes to determining whether an omission by a criminal defense lawyer

was deficient representation or strategic, no proposition is better settled than that it is

legitimate trial strategy to withhold a valid objection if it would draw attention to

damaging evidence—especially where the evidence is fleeting. *E.g.*, *State v. Gladden*,

116 Wn. App. 561, 568, 66 P.3d 1095 (2003) (counsel may have decided that an

objection would draw attention to the information he sought to exclude); *State v.

Johnson*, No. 35492-6-II, slip op. (unpublished opinion) at 30-31 (Wash. Ct. App. Oct 28,

2008) (evidence was likely inadmissible but defense counsel did not perform deficiently

when he chose not to object and draw attention to brief line of questioning); *State v.

Mendoza*, 139 Wn. App. 693, 713, 162 P.3d 439 (2007), *aff'd*, 165 Wn.2d 913, 205 P.3d

113 (2009) (decision not to object, which would highlight inadvertently-elicited

information and cause jury to focus on it, was legitimate trial strategy). It was not deficient performance for Mr. Anderson's lawyer to withhold objection when Officer Gillette testified to the near hit of a warrant for an Eric Anderson.

Failure to move for a mistrial is not ineffective assistance of counsel where it is clear the motion would have been denied. "A mistrial should be granted when the defendant has been so prejudiced that nothing short of a new trial can [e]nsure that the defendant will be tried fairly." *State v. Gamble*, 168 Wn.2d 161, 177, 225 P.3d 973 (2010). Officer Gillette's reference was to "a near hit of a warrant" (whatever that meant to jurors), not a conviction, and it was fleeting. The jury would necessarily hear that after Officer Gillette ran the name "Michael Anderson" and it proved false, the mobile data terminal provided Eric Anderson's name. If left to wonder why Eric Anderson's name was generated, the jury might have imagined something more serious than a "near hit of a warrant." Given these facts and the high bar to a mistrial, a motion for a mistrial would have been futile. Neither deficient representation nor prejudice is shown. *See State v. Brown*, 159 Wn. App. 366, 371, 245 P.3d 776 (2011) (counsel has no duty to pursue strategies that reasonably appear unlikely to succeed).

*Jury instruction 5*

In response to Mr. Anderson's ineffective assistance claim based on the giving of jury instruction 5, the State contends that the doctrine of invited error precludes any challenge, because Mr. Anderson's trial counsel proposed the instruction. While the

8

invited error doctrine "generally forecloses review of an instructional error, [it] does not bar review of a claim of ineffective assistance of counsel based on such instruction." *State v. Woods*, 138 Wn. App. 191, 197, 156 P.3d 309 (2007). "Proposing a detrimental instruction, even when it is a [pattern instruction], may constitute ineffective assistance of counsel." *Id.* at 197-98.

Again, the instruction said:

You may consider evidence that the defendant has been convicted of a crime only in deciding what weight or credibility to give to the defendant's testimony and for no other purpose.

VRP at 188; CP at 46. No evidence was presented that Mr. Anderson had ever been convicted of a crime and in isolation, the instruction might suggest that he had. Once Mr. Anderson decided not to testify, no imaginable tactical reason supported giving the instruction. Had Mr. Anderson's lawyer objected, the trial court would certainly have excluded it. Failing to withdraw it was deficient representation. But given the evidence and argument at trial and the court's entire instructions, Mr. Anderson is unable to show a reasonable probability that had the instruction not been given, the trial outcome would have been different.

The jurors were given 24 jury instructions that extended to 26 pages. Instruction 5 was among the earliest and the shortest. It was in the midst of other instructions that were not specific to the charges against Mr. Anderson and, like those instructions, would have appeared to a reasonable juror to be standard.

9

The court's very first instruction told jurors that "[t]he evidence that you are to consider during your deliberations consists of the testimony that you have heard from witnesses and the exhibits that [the court] admitted during the trial," CP at 40, and the jurors had heard no evidence that Mr. Anderson had been convicted of a crime. "Juries are presumed to follow the court's instructions absent evidence to the contrary." *State v. Dye*, 170 Wn. App. 340, 348, 283 P.3d 1130 (2012). Absent a showing of prejudice, Mr. Anderson's claim of ineffective assistance fails.

### *Costs on appeal*

Finally, Mr. Anderson asks this court to waive costs on appeal if he does not substantially prevail. "RAP 14.2 affords the appellate court latitude in determining if costs should be allowed." *State v. Nolan*, 141 Wn.2d 620, 626, 8 P.3d 300 (2000). By general order, this court has created a procedure by which appellants may provide evidence and argument on the basis of which the panel can exercise informed discretion whether to deny costs. *See* Gen. Order of Division III, *In re the Matter of Court Administration Order re: Request to Deny Cost Award* (Wash. Ct. App. June 10, 2016).

Mr. Anderson has complied with our general order but the information provided does not persuade the panel that this is a case in which we should exercise our discretion to waive costs. Our decision is without prejudice to Mr. Anderson's right to demonstrate to our commissioner his current or likely future inability to pay. *See* RAP 14.2.

No. 34576-9-III
*State v. Anderson*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to RCW

2.06.040.

_____
Siddoway, J.

WE CONCUR:

_____
Korsmo, J.

_____
Pennell, J.

11