[No. 76544-8. En Banc.]
Argued October 11, 2005.    Decided January 26, 2006.

THE STATE OF WASHINGTON, *Respondent*, v. TRACEY JADE JOHNSTON, *Petitioner*.

*Sarah M. Hrobsky* and *Gregory C. Link* (of *Washington Appellate Project*), for petitioner.

*Norm Maleng, Prosecuting Attorney*, and *Ian M. Goodhew* and *James M. Whisman, Deputies*, for respondent.

¶1 Madsen, J. — Petitioner Tracey Johnston contends that because the jury instructions did not define "threat" as a "true threat," the Court of Appeals erred in affirming his conviction for threatening to bomb Sea-Tac International Airport. He also argues that the bomb threat statute is unconstitutionally overbroad unless it is given a limiting construction to prohibit only true threats. Finally, Johnston argues that there is insufficient evidence that he made a true threat and, thus, the charge against him must be dismissed. We agree that the jury was improperly instructed and that the statute must be construed to prohibit only true threats and reverse the Court of Appeals. However, we remand for a new trial under proper instructions.

FACTS

¶2 On May 2, 2001, Alaska Airlines flight attendant Jennifer Stellflug noticed two passengers who appeared to be intoxicated, petitioner Tracey Johnston and another man. After seeing the men drinking alcoholic beverages, Stellflug told the men the use of personal alcohol was not permitted. Following a second warning about the use of alcohol, she

confiscated an alcoholic beverage from the men. She and other flight attendants advised the pilots of the situation, who notified controllers at Sea-Tac, who in turn notified Port of Seattle police.

¶3 Port of Seattle Officer Raymond Blackwell met the incoming flight. Blackwell testified that when Johnston got off the plane it was obvious he had been drinking—"[t]here was a strong odor of alcohol and his eyes were watery and blood shot." Transcript of Proceedings (Oct. 4, 2001) (TR) at 85. Blackwell detained Johnston, obtained his identification and ran a computer check, then arrested Johnston on two outstanding misdemeanor warrants. Blackwell took Johnston to the airport security office. Blackwell testified that Johnston was "visibly upset" about the arrest, TR at 96, and that while Blackwell was booking Johnston and writing his report, Johnston "started vocalizing his unhappiness." TR at 92. Johnston said that "he would come back to the airport and . . . this place up" and that "he was going to blow this place up." TR at 94. Blackwell testified that Johnston said that "he knew about the airport, and he knew what it would take . . . all he needed was a Ryder truck and some nitro diesel fuel . . . ." TR at 94-95. Johnston also said that "he would fin[d] that bitch of a flight attendant . . . and get her and said he believed she lived in Mercer Island." TR at 94.

¶4 Johnston was charged with threats to bomb or injure property in violation of RCW 9.61.160.[1] Over defense counsel's objection, the trial court instructed the jury that "[t]hreat means to communicate, directly or indirectly, the intent to wrongfully cause physical damage to the property of a person other than the actor," Clerk's Papers (CP) at 16 (Jury Instruction 2.02), and declined to give Johnston's proposed instruction defining a "true threat." In closing argument, Johnston's counsel described Johnston as drunk and suggested that the jury should not convict because

---

[1] Former RCW 9.61.160 (1977) was amended and recodified as RCW 9.61.160(1). Laws of 2003, ch. 53, § 38 (effective July 1, 2004). No substantive change was made, and this opinion will therefore refer to the current statute.

Johnston's threat could not be taken seriously under these circumstances. The State's objection to this argument was sustained. The prosecuting attorney argued that intent to carry out the threat was not required. During jury deliberations, the jury asked, "Are we suppose[d] to judge if defendant is guilty of only 'saying the words' or deciding if defendant 'actually has intent to carry out the threat[?]' " CP at 21. Over a defense objection, the trial court responded, "Intent to carry out the threat is not an element of the crime." CP at 21. Johnston was convicted and he appealed.

¶5 The Court of Appeals affirmed the conviction in an unpublished opinion. Johnston petitioned for discretionary review. We granted the petition and remanded to the Court of Appeals for reconsideration in light of *State v. Kilburn*, 151 Wn.2d 36, 84 P.3d 1215 (2004). The Court of Appeals again affirmed the conviction in an unpublished opinion. *State v. Johnston*, noted at 123 Wn. App. 1044, 2004 Wash. App. LEXIS 2364. The court reiterated its prior holdings that RCW 9.61.160(1) is neither overbroad nor limited to unprotected speech and the jury was properly instructed. The Court of Appeals distinguished *Kilburn* on the basis that the statements in *Kilburn* were made in jest, unlike Johnston's statements. Johnston again sought discretionary review, which we granted.

## ANALYSIS

¶6 The parties agree that RCW 9.61.160 must be construed to limit its application to true threats in order to avoid facial invalidation of the statute on overbreadth grounds[2] under the first amendment to the United States Constitution and article I, section 5 of the Washington

---

[2] Johnston contended in briefing to the Court of Appeals that RCW 9.61.160(1) is overbroad both facially and as' applied. He does not make this claim in the briefing filed in this court. "An overbreadth challenge is facial . . . ." *City of Bellevue v. Lorang*, 140 Wn.2d 19, 26, 992 P.2d 496 (2000); *see Ward v. Utah*, 398 F.3d 1239, 1246 (10th Cir. 2005) (an overbreadth challenge is a facial challenge).

Constitution.[3] The Court of Appeals, however, concluded that RCW 9.61.160 is neither overbroad nor limited to unprotected speech. *See Johnston*, 2004 Wash. App. LEXIS 2364, at *6, 9.

¶7 RCW 9.61.160(1) provides in relevant part:

> It shall be unlawful for any person to threaten to bomb or otherwise injure any public or private school building, any place of worship or public assembly, any governmental property, or any other building, common carrier, or structure, or any place used for human occupancy . . . .

¶8 The statute regulates pure speech and therefore "must nevertheless be 'interpreted with the commands of the First Amendment clearly in mind.'" *State v. Williams*, 144 Wn.2d 197, 207, 26 P.3d 890 (2001) (quoting *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969)). Certain categories of speech "'are no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality.'" *Kilburn*, 151 Wn.2d at 42 (quoting *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 504, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). One of these categories of punishable words is "true threats." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003); *Kilburn*, 151 Wn.2d at 43 (citing cases) ("true threats" are unprotected speech).[4]

¶9 We have adopted an objective standard for determining what constitutes a true threat: A "true threat" is a statement

---

[3] While Johnston relies on both the First Amendment and article I, section 5 of the Washington Constitution, he does not argue for an independent analysis under the state constitution.

[4] The United States Supreme Court has explained that statements in its opinions that certain categories of expression are unprotected speech mean "that these areas of speech can, consistently with the First Amendment, be regulated *because of their constitutionally proscribable content* . . . —not that they are categories of speech entirely invisible to the Constitution, so that they may be made the vehicles for content discrimination unrelated to their distinctively proscribable content." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 383-84, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992).

"in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of an intention to inflict bodily harm upon or to take the life of [another individual]."
*United States v. Khorrami*, 895 F.2d 1186, 1192 (7th Cir. 1990) (alteration in original) (quoting *United States v. Hoffman*, 806 F.2d 703, 707 (7th Cir. 1986)), *quoted in Williams*, 144 Wn.2d at 207-08; *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001); *Kilburn*, 151 Wn.2d at 43; *see State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998). "[W]hether a true threat has been made is determined under an objective standard that focuses on the speaker." *Kilburn*, 151 Wn.2d at 44.[5] "A true threat is a serious threat, not one said in jest, idle talk, or political argument." *Id.* at 43.

¶10 The United States Supreme Court has said that " '[t]rue threats' encompass those statements where the

___

[5] As we noted in *Kilburn*, the federal circuits are split over whether an objective speaker-based or listener-based standard should be used to determine if a threat is a true threat. *Kilburn*, 151 Wn.2d at 45 n.3; *compare, e.g., United States v. Schiefen*, 139 F.3d 638 (8th Cir. 1998) (speaker-based standard); *United States v. Orozco-Santillan*, 903 F.2d 1262 (9th Cir. 1990) (speaker-based standard) *with, e.g., United States v. Alaboud*, 347 F.3d 1293 (11th Cir. 2003) (listener-based standard); *see generally* Jennifer E. Rothman, *Freedom of Speech and True Threats*, 25 HARV. J.L. & PUB. POL'Y 283, 302 (Fall 2001) ("[t]he majority of circuits have developed a version of a reasonable person test, but are split over whether the test should be from the perspective of the speaker or the listener"). As we also noted in *Kilburn*, the Eighth Circuit has reasoned that the difference between the standards is insignificant because a reasonably foreseeable response from the listener and an actual reasonable response should be the same. *Kilburn*, 151 Wn.2d at 45 n.3 (citing *John Doe v. Pulaski County Special Sch. Dist.*, 306 F.3d 616, 623 (8th Cir. 2002)); *see also Alaboud*, 347 F.3d at 1297 n.3. The First Circuit disagrees, however, rejecting the listener-based standard in part because the speaker-based standard "better avoids the perils that inhere in the 'reasonable-recipient standard,' namely that the jury will consider the unique sensitivity of the recipient." *United States v. Fulmer*, 108 F.3d 1486, 1491 (1st Cir. 1997). The court said that it is "particularly untenable that, were we to apply a standard guided from the perspective of the recipient, a defendant may be convicted for making an ambiguous statement that the recipient may find threatening because of events not within the knowledge of the defendant." *Id.*

The Seventh Circuit has expressly stated that its test in *Khorrami*, which we have adopted, is a speaker-based test. In *United States v. Saunders*, 166 F.3d 907, 913 (7th Cir. 1999), for example, the court quoted the standard from *Khorrami* and explained that "[t]his objective standard presented in *Khorrami* focuses on whether a reasonable speaker would foresee that the recipient of his words would take the statement seriously." *Id.* at 913.

speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Black*, 538 U.S. at 359.[6] "The speaker need not actually intend to carry out the threat." *Id.* at 359-60; *see Kilburn*, 151 Wn.2d at 45-48. The reasons that true threats of violence are unprotected speech are to protect individuals from the fear of violence, the disruption engendered by that fear, and the possibility that the threatened violence will occur. *Black*, 538 U.S. at 360; *see R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992); *Kilburn*, 151 Wn.2d at 43; *J.M.*, 144 Wn.2d at 478.

¶11 The constitutionality of the Washington bomb threat statute has been addressed in only a few cases. The Court of Appeals in the present case relied on two cases in support of its conclusion that RCW 9.61.160 is not overbroad, *State v. Edwards*, 84 Wn. App. 5, 16-17, 924 P.2d 397 (1996) and *State v. Smith*, 93 Wn. App. 45, 47-48, 966 P.2d 411 (1998). Initially, as Johnston correctly points out, the analysis in *Edwards* is flawed because it conflates two categories of unprotected speech, fighting words and true threats, as the court in *Smith* explained. *Id.* at 49-50. The court in *Smith* properly recognized that the statute must be construed

---

[6] In *Black*, the United States Supreme Court addressed a Virginia statute criminalizing a type of threat, cross burning with intent to intimidate, which the Virginia Supreme Court had found unconstitutional. The Virginia statute also contained a provision permitting a presumption of intent to intimidate from evidence of the cross burning itself. Two cases were presented. The first involved defendant Black, a leader at a Ku Klux Klan rally, who was convicted for burning a cross on private property. The cross was visible to people on nearby property who were not part of the rally. Black's conviction rested on the presumption. The second case involved men convicted of burning a cross in the yard of one of the men's neighbors, an African-American. Although race may have been a factor, the burning was evidently in retaliation for complaints about target shooting at the defendant's house. Evidence of actual intent to intimidate was offered in this case.

The Court held that Virginia could criminalize cross burning with the intent to intimidate "because burning a cross is a particularly virulent form of intimidation." *Black*, 538 U.S. at 363. But the Court also held that the statutory presumption rendered the law unconstitutional under the First Amendment because it permitted a conviction solely on the basis of cross burning, although cross burning may have one of two meanings—either constitutionally proscribable intimidation or constitutionally protected core political speech (a statement of ideology). *Id.* at 364-67; *id.* at 384-87 (Souter, J., concurring in part and dissenting in part).

to prohibit only unprotected speech in order to avoid overbreadth. *Id.* at 48-50; *see also State v. Brown,* 50 Wn. App. 405, 411, 748 P.2d 276 (1988) (RCW 9.61.160 is "not overbroad because it is readily susceptible to a narrow construction . . . which limits its application to unprotected speech," i.e., threats of harm to others). But as Johnston contends, *Edwards* and *Smith* do not support the Court of Appeals' twin conclusions that the statute is neither over-broad nor limited to unprotected speech.[7]

¶12 As the parties here agree, unless the bomb threat statute is given a limiting instruction so that it proscribes only true threats, it is overbroad. A law criminalizing speech is unconstitutionally overbroad under the First Amendment " 'if it sweeps within its prohibitions constitu-tionally protected free speech activities.' " *City of Bellevue v. Lorang,* 140 Wn.2d 19, 26, 992 P.2d 496 (2000) (quoting *City of Seattle v. Huff,* 111 Wn.2d 923, 925, 767 P.2d 572 (1989)). The overbreadth doctrine will invalidate a statute only if the " 'enactment reaches a substantial amount of constitu-tionally protected conduct,' " *City of Houston v. Hill,* 482 U.S. 451, 458, 107 S. Ct. 2502, 96 L. Ed. 2d 398 (1987) (quoting *Hoffman Estates v. Flipside, Hoffman Estates, Inc.,* 455 U.S. 489, 494, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982)), "judged in relation to the statute's plainly legitimate sweep," *Broadrick v. Oklahoma,* 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). *See State v. Pauling,* 149 Wn.2d 381, 386, 69 P.3d 331 (2003); *Lorang,* 140 Wn.2d at 26-27. Further, "[a] statute will be invalidated *only if* the court is unable to limit sufficiently its standardless sweep by a limiting construction." *Pauling,* 149 Wn.2d at 386.

¶13 Here, the statute reaches a substantial amount of protected speech. For example, threats made in jest, or that

---

[7] This court found the statute constitutional as applied in *State v. Young,* 83 Wn.2d 937, 523 P.2d 934 (1974), where the defendant argued that his threat to bomb a public school building was mere advocacy. The court observed that the statute prohibits a present threat or intent to bomb or otherwise injure school buildings and rejected the defendant's argument that his threat was mere advocacy on the basis that the trial court had found otherwise. *Id.* at 941-42. *Young* does not address the issue raised by Johnston.

constitute political statements or advocacy, would be proscribed unless the statute is limited to true threats. Accordingly, the statute must be limited to apply only to true threats. *See Kilburn,* 151 Wn.2d at 43; *Williams,* 144 Wn.2d at 208.

¶14 We construe RCW 9.61.160 to avoid an overbreadth problem by limiting it to true threats.

¶15 The next question is whether the jury was properly instructed. Johnston proposed a jury instruction defining a true threat, although the instruction did so in terms of the reasonable listener-based standard rather than the speaker-based standard this court has adopted. The trial court refused to give the instruction and instead instructed the jury solely in terms of former RCW 9A.04.110(25)(b) (1998). The parties agree that the jury instructions were erroneous because they did not define "true threat."

¶16 The Court of Appeals held, however, that the instruction of "threat" provided to the jury "was . . . not improper because it did not require the threat to rise to the level of a true threat," reasoning that RCW 9.61.160 is not limited to unprotected speech. *Johnston,* 2004 Wash. App. LEXIS 2364, at *9. This holding conflicts with the United States Supreme Court decision in *Black,* our decisions in *Williams, J.M., Kilburn,* and the body of federal case law. RCW 9.61.160 must be limited to true threats, as explained above, and the jury must be instructed accordingly.

¶17 While pointing out that instructional error involving the elements of a crime may be harmless error, *see State v. Brown,* 147 Wn.2d 330, 340, 58 P.3d 889 (2002), the State nevertheless concedes that the error in this case cannot be deemed harmless beyond a reasonable doubt in light of the facts and the jury's inquiry. This concession is appropriate. The evidence presented at trial appears close on the question whether Johnston's statements constituted a true threat. Exacerbating the problem, the jury inquired whether it could convict based on the words alone, or whether it had to find that Johnston intended to carry out the threat. Because this inquiry was couched in the alter-

native, when the trial court responded that intent to carry out the threat was not an element of the crime,[8] the jury could infer that the alternative was correct, i.e., that it could convict merely on the basis that Johnston said the words.[9]

■ ¶18 Finally, Johnston contends that the evidence was insufficient to convict him of violating RCW 9.61.160. He urges that an independent examination of the record shows that he did not make a true threat. He contends that because there was insufficient evidence that he made a true threat, his conviction must be reversed and the charge dismissed.

¶19 Whether language constitutes a true threat is an issue of fact for the trier of fact in the first instance. *United States v. Fulmer*, 108 F.3d 1486, 1492 (1st Cir. 1997); *Khorrami*, 895 F.2d at 1192; *Melugin v. Hames*, 38 F.3d 1478, 1485 (9th Cir. 1994). However, as explained in *Kilburn*, a rule of independent appellate review applies in First Amendment speech cases. An appellate court " 'must make an independent examination of the whole record, . . . ' so as to assure [itself] that the judgment does not constitute a forbidden intrusion on the field of free expression." *Kilburn*, 151 Wn.2d at 50 (internal quotation marks omitted) (quoting *Bose Corp.*, 466 U.S. at 508). The appellate court is required to independently review only " 'crucial facts'—those so intermingled with the legal question as to make it necessary, in order to pass on the constitutional question, to analyze the facts." *Kilburn*, 151 Wn.2d at 50-51. Thus, whether a statement constitutes a true threat is a matter subject to independent review. The rule of independent appellate review does not extend to factual

---

[8] This response correctly stated the law but, in context, was incomplete.

[9] Johnston also complains that the jury was improperly instructed, over defense counsel's objection, in terms of RCW 9.61.160(2) (formerly RCW 9.61.170), that "[i]t is not a defense to a prosecution for threats to bomb that the threatened bombing was a hoax. A hoax is an act intended to trick or dupe." CP at 18 (Jury Instruction 2.04). Johnston argues the instruction failed to conform to the evidence because he neither presented evidence nor argued that his statements were a hoax. It is unlikely that this issue will arise on remand and therefore we do not address it.

determinations such as findings on credibility, however. *Id.*; *see United States v. Hanna*, 293 F.3d 1080, 1088 (9th Cir. 2002) (when applying the principle of independent review, the appellate court defers to the trier of fact on matters such as determinations of historical facts and credibility).

¶20 If, however, the trial proceedings are tainted by error, an appellate court may be unable to conduct an independent review of the record—for example, where inadmissible evidence that was admitted may have influenced the jury. *Id.* at 1088. In Johnston's case, the jury was influenced by the erroneous jury instructions that governed the trial. Under these circumstances, independent appellate review is inappropriate. Instead, this case must be remanded for a new trial under proper instructions.

CONCLUSION

¶21 We construe the bomb threat statute, RCW 9.61.160, to apply only to true threats. Construed in this way, the statute is not unconstitutionally overbroad. We hold that the jury instructions given at trial were insufficient to ensure a constitutional verdict, and the instructional error cannot be deemed to be harmless beyond a reasonable doubt. Accordingly, we reverse the Court of Appeals and remand this case for a new trial with directions that the jury must be instructed that a conviction under RCW 9.61.160 requires a true threat and must be instructed on the meaning of a true threat.

ALEXANDER, C.J., and C. JOHNSON, BRIDGE, CHAMBERS, OWENS, FAIRHURST, and J.M. JOHNSON, JJ., concur.

¶22 SANDERS, J. (concurring in part, dissenting in part) — I concur the jury was misinstructed but would dismiss, not remand. As conceded by the majority, a rule of independent appellate review applies in First Amendment cases, majority at 365 (citing *State v. Kilburn*, 151 Wn.2d 36, 50, 84 P.3d 1215 (2004)) and "whether a statement constitutes a true threat is a matter subject to independent review." Majority

at 365. Independent review may be inappropriate when inadmissible evidence was considered; however, where the error is in the jury instructions and the evidence would be the same on retrial, I can see no reason why we should not independently review the evidence to determine whether in the interest of free speech the speaker should be spared the burden of yet another trial. Nor does the majority cite authority to the effect that a new trial may be forced absent independent review.

¶23 Based on an independent review of the record, I conclude Mr. Johnston is correct that there is insufficient evidence of a true threat and would therefore reverse and dismiss.