IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 29268-1-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DUNCAN JOSEPH McNEIL, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |

BROWN, J. — Duncan Joseph McNeil III appeals his four convictions for gross misdemeanor harassment by threat of bodily injury. He contends we must reverse because the trial court erred by failing to give a "true threat" instruction; we agree. Additionally, he contends we must dismiss because insufficient evidence supports his convictions; we disagree. Accordingly, we reverse and remand for a new trial without reaching his unanimity instruction contention.

## FACTS

Mr. McNeil leased an office suite from Michael S. Sullivan. In May 2002, after long rental conflicts, Mr. McNeil twice angrily confronted Mr. Sullivan and his business associates, Kenneth Joseph Hall and Stan E. Ashby. The State charged Mr. McNeil under RCW 9A.46.020 with five counts of felony harassment by threat to kill. Counts I,

II, and III alleged that on May 16, 2002, Mr. McNeil threatened to kill Mr. Sullivan, Mr. Hall, and Mr. Ashby respectively. Counts IV and V alleged that on May 17, 2002, Mr. McNeil threatened to kill Mr. Sullivan and Mr. Hall respectively.

At trial, witnesses testified that on May 16, 2002, Mr. Sullivan was meeting with Mr. Hall and Mr. Ashby in his office suite but had left the front room temporarily when Mr. McNeil pounded on the locked door, peered through the window, and yelled, "Where the hell is that fat f\*\*k Mike?," spitting as he spoke. Report of Proceedings (RP) at 120. Mr. Hall responded Mr. Sullivan was not there. Mr. McNeil turned red in the face and looked menacingly at Mr. Hall. Mr. McNeil unsuccessfully asked Mr. Hall his name. Enraged, Mr. McNeil yelled he knew where Mr. Hall lived and would kill him, his family, and Mr. Ashby. Mr. McNeil appeared "very violent and intimidating" and "very unstable." RP at 239-40. Afraid, Mr. Sullivan, Mr. Hall, and Mr. Ashby waited for Mr. McNeil to leave then attempted to avoid him by exiting through a side door. Mr. McNeil chased them and yelled he would kill them all, particularly Mr. Sullivan.

Witnesses then testified that on May 17, 2002, Mr. Sullivan was approaching his office suite with Mr. Hall and another business associate when Mr. McNeil charged quickly toward them, carrying a baseball bat, guiding a leashed dog, and yelling, "I am going to kill you, Mike." RP at 222. Mr. Sullivan quickly retreated and Mr. McNeil said, "Where is that fat f\*\*k going?" RP at 219. Mr. Hall responded he did not know. Trembling with anger, Mr. McNeil accosted Mr. Hall in a "loud and angry" tone, yelling profanities at him, spitting in his face, and gesturing at him with the end of the baseball

bat. RP at 188. Mr. Hall dialed 911 on his cellular phone but did not press send. Then, Mr. McNeil jabbed Mr. Hall's abdomen with the end of the baseball bat, knocking out his breath and pushing him against a wall. Mr. McNeil lifted the baseball bat high as if preparing to strike Mr. Hall, who backed away, pressed the send command on his cellular phone, and cowered with his hands out for protection. Mr. McNeil yelled he knew where Mr. Hall lived and would kill him and his family. Mr. McNeil left in his vehicle before law enforcement arrived.

Mr. Sullivan, Mr. Hall, and Mr. Ashby recounted that both during and after each incident, they feared Mr. McNeil would fulfill his threats. Mr. Sullivan recalled he believed Mr. McNeil would attempt to harm or kill him at any time because Mr. McNeil knew his home and work addresses, tried to strike him with a vehicle three times before, chased him on foot once before, tried to grab him once before, and was taller than him. Consequently, Mr. Sullivan, Mr. Hall, and Mr. Ashby obtained restraining orders against Mr. McNeil. Additionally, Mr. Hall installed alarm and video surveillance systems in his home and carried a stick in his vehicle for protection.

Without objection, the trial court instructed the jury, "Threat means to communicate, directly or indirectly, the intent to cause bodily injury in the future to the person threatened or to any other person." Clerk's Papers at 188; RP at 664. Mr. McNeil did not request and the trial court did not give either a true threat instruction or a

3

unanimity instruction. *See* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 72, 4.25, at 110 (3d ed. 2008) (WPIC).[1]

A jury acquitted Mr. McNeil on count II but found him guilty on counts I, III, IV, and V of gross misdemeanor harassment as lesser included offenses. By special verdict, the jury found he made no threats to kill. He appealed.

ANALYSIS

A. True Threat Instruction

The issue is whether the trial court reversibly erred by failing to instruct the jury regarding a true threat, violating Mr. McNeil's First Amendment freedom of speech. He may raise this error claim for the first time on appeal. *See* RAP 2.5(a)(3); *State v. Schaler*, 169 Wn.2d 274, 287-88, 236 P.3d 858 (2010). Jury instructions are proper if they correctly state the applicable law, do not mislead the jury, and permit the parties to argue their case theories. *State v. Mark*, 94 Wn.2d 520, 526, 618 P.2d 73 (1980).

The First Amendment, by incorporation into the Fourteenth Amendment due process clause, bars a state from "abridging the freedom of speech." U.S. CONST. amend. I; *see Gitlow v. New York*, 268 U.S. 652, 666, 45 S. Ct. 625, 69 L. Ed. 1138 (1925). Threats are speech, but a state may criminalize a "true threat." *Virginia v. Black*, 538 U.S. 343, 359, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) (citing *Watts v.*

---

[1] While WPIC 2.24 currently incorporates the true threat definition, it did not at the time of Mr. McNeil's trial in May 2003. *See State v. Schaler*, 169 Wn.2d 274, 287 n.5, 236 P.3d 858 (2010) (noting the Washington State Supreme Court Committee on Jury Instructions amended WPIC 2.24 after *State v. Johnston*, 156 Wn.2d 355, 127 P.3d 707 (2006)).

*United States*, 394 U.S. 705, 708, 89 S. Ct. 1399, 22 L. Ed. 2d 664 (1969)). "'A true threat is a statement made in a context or under such circumstances wherein a reasonable person would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of [another individual].'" *State v. Williams*, 144 Wn.2d 197, 207-08, 26 P.3d 890 (2001) (alteration and omission in original) (quoting *State v. Knowles*, 91 Wn. App. 367, 373, 957 P.2d 797 (1998)); *see Black*, 538 U.S. at 359. "A true threat is a serious one, not uttered in jest, idle talk, or political argument." *State v. Hansen*, 122 Wn.2d 712, 718 n.2, 862 P.2d 117 (1993) (internal quotation marks omitted); *see Black*, 538 U.S. at 359. "The speaker need not actually intend to carry out the threat." *Black*, 538 U.S. at 359-60; *see State v. Kilburn*, 151 Wn.2d 36, 48, 84 P.3d 1215 (2004).

Where, as here, the State charges a defendant under RCW 9A.46.020 with felony harassment by threat to kill, the trial court must instruct the jury regarding a true threat. *Schaler*, 169 Wn.2d at 283-84, 287 (citing *State v. Johnston*, 156 Wn.2d 355, 363-64, 127 P.3d 707 (2006)). While the State argues this rule was inapplicable on the offense dates here, our case law has consistently construed RCW 9A.46.020 as proscribing solely true threats. *See Williams*, 144 Wn.2d at 208; *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001). Because the trial court failed to do so, it erred. Thus, we must reverse unless the error was "harmless beyond a reasonable doubt." *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967); *see Johnston*, 156 Wn.2d at 364, 366.

5

"Constitutional error is presumed to be prejudicial and the State bears the burden of proving that the error was harmless." *State v. Guloy*, 104 Wn.2d 412, 425, 705 P.2d 1182 (1985). The State must "prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." *Chapman*, 386 U.S. at 24; *see Schaler*, 169 Wn.2d at 288. The error is harmless if "uncontroverted evidence" supports finding the defendant uttered a true threat but is prejudicial if the record is "ambiguous as to whether the jury could have convicted on improper grounds." *Schaler*, 169 Wn.2d at 288 (citing *State v. Brown*, 147 Wn.2d 330, 341-43, 58 P.3d 889 (2002)). We must "independent[ly] review" those crucial facts necessarily involved in the legal determination of whether the First Amendment protects certain speech. *Kilburn*, 151 Wn.2d at 52 (applying *Bose Corp. v. Consumers Union of U.S., Inc.*, 466 U.S. 485, 104 S. Ct. 1949, 80 L. Ed. 2d 502 (1984)). Problematic here, the State does not argue harmless error.

Considering the jury rejected the threat-to-kill special verdicts, the record is ambiguous as to whether the jury convicted Mr. McNeil for uttering protected speech. He argued his statements, if made, were not serious. Given this backdrop, the jury may have viewed his statements as hyperbole. In other words, if the trial court had given a true threat instruction, the jury may have acquitted him. Therefore, we reverse Mr. McNeil's convictions.

## B. Evidence Sufficiency

The issue is whether sufficient evidence supports Mr. McNeil's convictions for gross misdemeanor harassment by threat of bodily injury. We consider his evidence sufficiency challenge to determine whether we must dismiss or remand for a new trial.

The Fourteenth Amendment due process clause requires the State to prove all essential elements of the crime charged beyond a reasonable doubt. U.S. CONST. amend. XIV; *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970). And, "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States*, 437 U.S. 1, 11, 98 S. Ct. 2141, 57 L. Ed. 2d 1 (1978) (construing U.S. CONST. amend. V). Evidence is sufficient to support a guilty finding if, "'after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (emphasis omitted) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). But we must "independent[ly] review" those crucial facts necessarily involved in the legal determination of whether the First Amendment protects certain speech. *Kilburn*, 151 Wn.2d at 52 (applying *Bose Corp.*, 466 U.S. 485).

A defendant is guilty of harassment if, without lawful authority, he or she "knowingly threatens . . . [t]o cause bodily injury immediately or in the future to the person threatened or to any other person," and "by words or conduct places the person

7

threatened in reasonable fear that the threat will be carried out." RCW

9A.46.020(1)(a)(i), (b). This form of harassment is a gross misdemeanor generally but

is a class C felony if the defendant "threaten[s] to kill the person threatened or any other

person." Former RCW 9A.46.020(2)(b) (1999). Either way, the threat must be a true

threat. *Kilburn*, 151 Wn.2d at 43 (citing *Williams*, 144 Wn.2d at 208; *J.M.*, 144 Wn.2d at

478). And, "the nature of a threat depends on all the facts and circumstances, [not] . . .

a literal translation of the words spoken." *State v. C.G.*, 150 Wn.2d 604, 611, 80 P.3d

594 (2003).

First, Mr. McNeil argues insufficient evidence supports finding he uttered true

threats. He reasons while the State solely presented evidence of threats to kill, the jury

specially found he made no threats to kill. But the jury ultimately convicted him, based

on threats of bodily injury, of gross misdemeanor harassment as a lesser included

offense of felony harassment. His statements, though literally threats to kill, necessarily

threatened to cause bodily injury as well. And, the victims recounted that his behavior

in each incident caused them to fear he would fulfill his threats. From each threat's

context, the jury could infer that a reasonable person would foresee others interpreting

Mr. McNeil's statements as serious expressions of intent to cause bodily injury. Thus,

the jury could find Mr. McNeil uttered true threats beyond a reasonable doubt.

Second, Mr. McNeil argues insufficient evidence supports finding that on May 16,

2002, he placed Mr. Sullivan, by words or conduct, in reasonable fear he would fulfill his

threat to cause bodily injury. He reasons while the State elected in closing argument to

8

rely solely on his harassing behavior inside the building, he did not threaten Mr. Sullivan until they were outside the building. But the State's omission did not constitute an election because Mr. McNeil's harassing behavior outside was part of a continuing course of conduct beginning inside. In context, the jury could find that on May 16, 2002, he placed Mr. Sullivan, by words or conduct, in reasonable fear he would fulfill his threat to cause bodily injury. Thus, the jury could find this essential element beyond a reasonable doubt.

In sum, sufficient evidence supports Mr. McNeil's convictions for gross misdemeanor harassment by threat of bodily injury. It follows that we need not dismiss.

Reversed and remanded for a new trial under a true threat instruction.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Brown, J.

WE CONCUR:

Kulik, J.

Antosz, J.P.T.

9