IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 39022-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| SARA M. BEAL, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Sara Beal assaulted her teenage daughter multiple times one morning, during which time she also threatened to bash her daughter's head in and kill her. A jury convicted her of fourth degree assault and gross misdemeanor harassment. She challenges the sufficiency of the evidence to support her harassment conviction. We conclude that the State presented sufficient evidence for a rational trier of fact to convict her based on the law at the time of trial.

While this matter was on appeal, the United States Supreme Court changed the law by adopting a subjective "true threat" standard. We requested supplemental briefing. Based on this briefing, we reverse Ms. Beal's harassment conviction and remand for a new trial.

FACTS

Sara Beal lived with her 15-year-old daughter, K.F.,[1] in a multilevel townhome in Spokane. On the morning of September 13, 2021, K.F. awoke before her mother. She went into her mother's room a couple of times to check to see if her mother was awake and to ask when she would be getting up.

Later that morning, Ms. Beal entered K.F.'s room and asked why she was "poking" her while she was asleep. Rep. of Proc. (RP) at 128. During this exchange, Ms. Beal jabbed K.F. three times on her leg with what appeared to be a screwdriver or nail. K.F. pushed her mother away, and Ms. Beal returned to her room.

One hour later, Ms. Beal returned to her daughter's room and began to argue and physically fight with her. They argued about Ms. Beal thinking people were after her and that a relative was stalking her. Ms. Beal then grabbed K.F. by her hair and hit her. Ms. Beal also pushed K.F. onto her bed and grabbed her neck with both hands. K.F. kicked Ms. Beal off her and pushed her out of the room.

---

[1] To protect the privacy interests of the minor child, we use her initials throughout this opinion. Gen. Order for Court of Appeals, *In re Changes to Case Title* (Wash. Ct. App. Aug. 22, 2018) (effective September 1, 2018), http://www.courts.wa.gov/appellate_trial_courts.

K.F. ran downstairs, sat on the front porch and called 911 and then her

grandmother. After 20 minutes, K.F. went back inside and returned to her room. During

this time, K.F. called 911 a second time to tell the operator that she and her mother had

worked it out and were not arguing anymore. Thirty minutes later, Ms. Beal entered

K.F.'s room and demanded her cell phone. Ms. Beal removed the SIM card[2] from K.F.'s

phone, then gave the phone back to her. K.F. had another SIM card, which she put into

her phone.

K.F. went back downstairs, and her mother later followed. They began fighting

again. Ms. Beal ripped a wall-mounted air conditioning unit out of the wall, believing

there were cameras inside it and said "it's all a set up" and accused K.F. of helping with

"it." RP at 136. During this exchange, Ms. Beal threatened to bash K.F.'s head in and

threatened to kill her. K.F. thought her mother was going to harm her and was trying to

throw the air conditioner (AC) at her head. K.F. thought her mother threw something at

her. Ms. Beal continued to chase K.F. around a table in their living room before the

police called K.F.'s phone back. K.F. ran outside to answer the call.

Spokane Police Department Officer Christopher Lequire responded to the

townhome. He was initially unable to find K.F., so he called her phone. On the call, he

---

[2] Subscriber information module.

3

could hear K.F. "crying heavily" and arguing in the background. RP at 101. K.F. eventually walked outside with her dog. She appeared distraught and was crying. Officer Lequire saw redness along the lower portion of K.F.'s neck and two small red dots on the right side of her neck.

While Officer Lequire spoke with K.F., Ms. Beal came outside. She complimented his hat, then made an incoherent statement. Officer Lequire asked her what she said, and she responded, "'Oh nothing. Talking to myself. I'm crazy.'" RP at 108. Ms. Beal then went back inside. When backup officers arrived, Officer Lequire knocked on the front door to speak with Ms. Beal. She answered the door with her arms extended and asked him to take her to jail. She told him that K.F. did not listen and was jumping on her, and that she warned K.F. to stop doing that or she would hurt her.

PROCEDURE

The State charged Ms. Beal with second degree assault, felony harassment based on a threat to kill, and fourth degree assault. The harassment charge required the State to prove, in part, that Ms. Beal communicated a "true threat" to K.F. Ms. Beal pleaded not guilty to the charges. She did not appear for her trial.

4

At trial, the State called three witnesses: Megan Lorincz, a nurse and strangulation

expert, Officer Lequire, and K.F.

K.F. testified consistent with the facts above. She described her mother ripping

the air conditioning unit off the wall:

> So we had like an [air conditioning unit] in the wall, and [my mother] just
> ripped it out thinking that there was [sic] cameras inside there, . . . and she
> was like saying how it's all a set up. . . . She was saying that I was helping
> with it and stuff, and she was telling me like I'm going to kill you. I'm
> going to bash your head in. She started chasing me around the table we had
> in the living room.

RP at 136.

When the deputy prosecutor asked K.F. if she was concerned that her mother was

going to harm her, K.F. replied, "Yeah" but she did not think her mother "would have

actually done it," yet added, "she threw [the AC unit] at me or something, though."

RP at 136-37.

When describing why she decided to call 911 to say she and her mother worked it

out after the first assault, K.F. testified that she thought her mother "has something

psychologically wrong with her, and I think that she has episodes, and I thought that was

just one she had." RP at 154.

After the State rested, defense counsel moved to dismiss the felony harassment

charge and argued the State failed to prove K.F. had a reasonable fear the threat to kill

would be carried out.  The court agreed but determined that sufficient evidence supported

the lesser degree charge of gross misdemeanor harassment.  Defense counsel rested

without calling any witnesses.

The jury found Ms. Beal guilty of fourth degree assault and gross misdemeanor

harassment,[3] and that she and K.F. were members of the same family or household.  The

jury acquitted Ms. Beal of second degree assault.

Ms. Beal timely appealed.

## ANALYSIS

TRUE THREATS

Ms. Beal challenges the sufficiency of the State's evidence on the harassment

charge, specifically contending the State failed to prove that she communicated a "true

threat."  Her original argument relied on Washington's objective "true threat" standard.

If Ms. Beal prevails on this issue, she would be entitled to dismissal of her harassment

conviction.  *See Burks v. United States*, 437 U.S. 1, 11 & n.6, 98 S. Ct. 2141, 57 L. Ed.

---

[3] The jury instructions related to the gross misdemeanor harassment charge correctly recited Washington's objective "true threat" standard:  "To be a [true threat], a statement or act must occur in a context or under such circumstances where a reasonable person, in the position of the speaker, would foresee that the statement or act would be interpreted as a serious expression of intention to carry out the threat rather than as something said in jest or idle talk."  *Compare* CP at 111 *with* 11 WASHINGTON PRACTICE: WASHINGTON PATTERN JURY INSTRUCTIONS: CRIMINAL 2.24, at 81-82 (5th ed. 2021).

6

2d. 1 (1978) (double jeopardy clause forbids retrial where the State failed to muster sufficient evidence to sustain conviction).

A.     SUFFICIENCY CHALLENGE UNDER WASHINGTON'S OBJECTIVE STANDARD

"The sufficiency of the evidence is a question of constitutional law that we review de novo." *State v. Rich*, 184 Wn.2d 897, 903, 365 P.3d 746 (2016). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of the State and interpreted most strongly against the defendant." *Id.*

To prove gross misdemeanor harassment, the State needed to show that Ms. Beal knowingly threatened to cause K.F. bodily injury immediately or in the future and that K.F. was in reasonable fear that the threat would be carried out. RCW 9A.46.020(1)(a)(i), (b).

When a threat is an element of a crime, as with the harassment statute, the State also must prove that the alleged threat was a "true threat." *State v. Kohonen*, 192 Wn. App. 567, 575, 370 P.3d 16 (2016); *accord State v. Kilburn*, 151 Wn.2d 36, 43, 84 P.3d 1215 (2004) ("RCW 9A.46.020(1)(a)(i) must be read as clearly prohibiting only 'true

threats.'"").  A "true threat" is a form of unprotected speech under the First Amendment to

the United States Constitution.[4]  *Watts v. United States*, 394 U.S. 705, 707, 89 S. Ct.

1399, 22 L. Ed. 2d 664 (1969); *Kilburn*, 151 Wn.2d at 43; *State v. J.M.*, 144 Wn.2d 472,

477, 28 P.3d 720 (2001).  Under Washington common law, a "true threat" is a statement

made in a context or under such circumstances wherein a reasonable person would

foresee that the statement would be interpreted as a serious expression of intention to

inflict bodily harm.  *State v. Allen*, 176 Wn.2d 611, 626, 294 P.3d 679 (2013).

This is an objective standard that focuses on the speaker.  *Kilburn*, 151 Wn.2d at

44.  The speaker does not need to actually intend to carry out the threat.  *Id.* at 46.  A

"true threat" is a serious threat, not one said in jest, idle talk, or political argument.  *Id.* at

43.  Washington courts determine whether a statement is a "true threat" by considering

the totality of the circumstances.  *State v. Boyle*, 183 Wn. App. 1, 8, 335 P.3d 954 (2014).

Here, Ms. Beal had assaulted her daughter over a period of time and, while in the

process of ripping the air conditioner from the wall, told her daughter that she was going

to bash her head in and kill her.  Given this context and given our standard of review, a

---

[4] "True threats" are not protected because there is an overriding governmental interest in "'protect[ion of] individuals from the fear of violence, from the disruption that fear engenders, and from the possibility that the threatened violence will occur.'" *State v. J.M.*, 144 Wn.2d 472, 478, 28 P.3d 720 (2001) (quoting *R.A.V. v. City of St. Paul*, 505 U.S. 377, 388, 112 S. Ct. 2538, 120 L. Ed. 2d 305 (1992)).

trier of fact could reasonably find that a reasonable speaker would interpret the threat as a serious expression of an intent to inflict bodily harm on K.F.

Ms. Beal relies on *Kilburn* and *State v. D.R.C.*, 13 Wn. App. 2d 818, 467 P.3d 994 (2020), to support her position. Those cases are inapposite. In *Kilburn*, a student laughingly made comments about bringing a gun to school to a classmate. 151 Wn.2d at 39, 52. Because of the student's history of making jokes and his laughing while making the comments, our Supreme Court held that a reasonable person in the student's shoes would not foresee that the classmate would interpret his comments as a threat. *Id*. at 52-53. Similarly, in *D.R.C.*, a daughter texted her friends that she was going to kill her mother. 13 Wn. App. 2d at 821-22. Because the threatening language was mixed with humorous language and emojis to represent that she was kidding, the court concluded the daughter did not make a true threat. *Id*. at 828.

Unlike in those cases, here there is no indication Ms. Beal was joking, laughing, or jesting with her daughter. Instead, Ms. Beal made a serious threat toward her daughter after having physically assaulted her and appeared to have the means to carry out that threat. Thus, Ms. Beal's reliance on *Kilburn* and *D.R.C.* is misplaced. We reject Ms. Beal's sufficiency challenge under Washington's objective "true threat" standard.

B.   SUFFICIENCY CHALLENGE UNDER THE UNITED STATES SUPREME COURT'S
     NEW SUBJECTIVE STANDARD

During the pendency of Ms. Beal's appeal, the United States Supreme Court

decided *Counterman v. Colorado*, where the Court changed the standard required to

prove a "true threat" under the First Amendment to the United States Constitution.

___ U.S. ___, 143 S. Ct. 2106, 216 L. Ed. 2d 775 (2023).  There, Colorado attempted to

prosecute Mr. Counterman for violating a stalking statute after he sent a woman hundreds

of unsolicited Facebook messages.  *Id*. at 2112.  The woman contacted authorities when

her fear of the messages began to upend her daily life.  *Id*.

Colorado charged Mr. Counterman under a stalking statute that required the State

to prove, in part, that the defendant communicated a "true threat" to the victim.[5]  *Id*.

Under Colorado common law, courts determined whether a statement constituted a "true

threat" using an objective reasonable person standard.  *Id*.  Colorado therefore needed to

prove that a reasonable person would have understood Mr. Counterman's statements, the

Facebook messages, as threatening.  *Id*.  The State did not need to prove that Mr.

---

[5] Under Colorado's stalking statute, it is unlawful for a person to "[r]epeatedly . . .
make[ ] any form of communication with another person . . . in a manner that would
cause a reasonable person to suffer serious emotional distress and does cause that person
. . . to suffer serious emotional distress."  COLO. REV. STAT. § 18-3-602(1)(c);
*Counterman*, 143 S. Ct. at 2112.

10

Counterman had any "'subjective intent to threaten.'" *Id.* (quoting *In re Interest of R.D.*, 2020 CO 44, 464 P.3d 717, 731 n.21.

Mr. Counterman moved to dismiss on First Amendment grounds, arguing that his messages were not "true threats" because he was subjectively unaware of their threatening nature. *Id.* The trial court determined that Mr. Counterman's messages constituted "true threats" by applying Colorado's objective reasonable person standard, and the Colorado Court of Appeals affirmed. *Id.* at 2112-13. After the Colorado Supreme Court denied review, Mr. Counterman petitioned the United States Supreme Court for certiorari. *Id.* at 2113. The Court granted certiorari on two questions: "(1) whether the First Amendment requires proof of a defendant's subjective mindset in true-threats cases, and (2) if so, what *mens rea* standard is sufficient." *Id.*

The Court held that, in "true threat" prosecutions, the First Amendment requires states to prove (1) the defendant had some subjective understanding of their statements' threatening nature, and (2) the defendant had a mental state of recklessness, whereby they consciously disregarded a substantial and unjustified risk that their conduct would cause harm to another. *Id.* at 2111-12. The Court vacated and remanded the case for retrial under the new standard. *Id.* at 2119.

No. 39022-5-III
*State v. Beal*


After the *Counterman* decision, we requested supplemental briefing from the

parties on (1) whether we should apply the new subjective "true threat" standard even

though Ms. Beal only challenged the sufficiency of the State's evidence rather than the

"true threat" jury instruction or the constitutionality of the harassment statute, and

(2) if we apply the new standard, what relief is appropriate? Letter from Tristen Worthen,

Clerk/Administrator, Court of Appeals, Div. III, requesting supplemental briefing, to

Brett Pearce, Attorney for Respondent, and Shawn Hennessy and Lise Ellner, Attorneys

for Appellant, *State v. Beal*, No. 39022-5-III (Wash. Ct. App. June 29, 2023). We address

the parties' answers to these two questions in turn.

> 1.      *We will apply the new subjective "true threat" standard*

Both parties argue we should apply the new subjective "true threat" standard to

Ms. Beal's case. We agree.

Generally, we retroactively apply United States Supreme Court decisions that

announce new constitutional rules governing criminal prosecutions to all criminal cases

not yet final on appeal. *State v. Harris*, 154 Wn. App. 87, 92, 224 P.3d 830 (2010) (citing

*Griffith v. Kentucky*, 479 U.S. 314, 322, 107 S. Ct. 708, 93 L. Ed. 2d 649 (1987); *State v.*

*McCormack*, 117 Wn.2d 141, 144-45, 812 P.2d 483 (1991)). And, as the State notes, we

generally apply new rules to all cases subject to direct review at the time the rule is

12

announced. *State v. Wences*, 189 Wn.2d 675, 690-91, 406 P.3d 267 (2017). Here, the

subjective "true threat" standard from *Counterman* is a new constitutional rule governing

criminal prosecutions, announced while Ms. Beal's case was not yet final on appeal. We

agree that the new subjective standard applies to Ms. Beal's case.

Under *Counterman*, the State is required to prove in "true threat" prosecutions that

(1) the defendant had some subjective understanding of their statements' threatening

nature, and that (2) the defendant had a mental state of recklessness, whereby they

consciously disregarded a substantial and unjustified risk that their conduct would cause

harm to another. 143 S. Ct. at 2111-12.

2.      *We remand for a new trial*

The parties disagree on the appropriate remedy. Ms. Beal argues the evidence is

insufficient to sustain her harassment conviction under the new subjective standard. The

State argues the instructional error was harmless beyond a reasonable doubt and that the

conviction should be affirmed. Both parties understate what a trier of fact might

reasonably decide. We note—whether language constitutes a "true threat" is an issue of

fact for the trier of fact in the first instance. *State v. Johnston*, 156 Wn.2d 355, 365, 127

P.3d 707 (2006).

Ms. Beal's argument focuses on the first of *Counterman*'s requirements—that the State's evidence was insufficient to prove that she had some subjective understanding of her statements' threatening nature. She highlights portions of her daughter's testimony. K.L. testified her mother thought "people were after her," her mother thought there were cameras inside of the wall AC unit, and her mother "has something psychologically wrong with her, and I think she has episodes . . . ." RP at 130, 136, 154. Ms. Beal argues this evidence establishes that she could not have subjectively understood the nature of her threats. We disagree.

As noted above, we must review the evidence and all reasonable inferences in the light most favorable to the State. In addition to the above, K.L also testified her mother removed her SIM card to prevent her from calling 911 again. Thus, even during her episode, Ms. Beal understood what to do to prevent her daughter from calling 911 again. This evidence would permit a rational trier of fact to find that Ms. Beal had some subjective understanding of the threatening nature of her statements.

The State counters that the instructional error was harmless beyond a reasonable doubt. To hold a constitutional error harmless, "we must 'conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error.'" *State v. Brown*, 147 Wn.2d 330, 341, 58 P.3d 889 (2002) (quoting *Neder v. United States*, 527 U.S. 1, 19,

14

No. 39022-5-III
*State v. Beal*

119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)). When applied to an element omitted from or misstated in a jury instruction, the error is harmless if that element is supported by uncontroverted evidence. *Id.* On the other hand, error is not harmless when the evidence and instructions leave it ambiguous as to whether the jury would have convicted on proper grounds. *See id.* at 341-43.

The record shows that Ms. Beal was not lucid and was upset her daughter was recording her. One does not kill a person, much less a daughter, for secretly recording them. Even K.L. testified she did not think her mother's threats were literal. A rational trier of fact could find that Ms. Beal's statements were not literal and that she was subjectively unaware of their threatening nature.

Remand for retrial is appropriate.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Lawrence-Berrey, J.

WE CONCUR:

Fearing, C.J.

Pennell, J.

15