IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| STATE OF WASHINGTON, | ) | No. 32719-1-III |
|---|---|---|
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| NOLAND ASHLEY DOMINGUEZ, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, A.C.J. — Noland Dominguez appeals his conviction for

felony harassment. He argues (1) Washington's harassment statute, RCW 9A.46.020, is

unconstitutionally overbroad and vague because it lacks a subjective intent requirement,

(2) the State improperly introduced evidence of an incident years earlier where someone

gouged out the victim's eye, (3) the State presented insufficient evidence to prove the

victim's fear was reasonable, and (4) cumulative error deprived him of a fair trial. We

affirm.

FACTS

Dominguez lived next door to Gerardo Medel Jr. The two were friendly.

However, their relationship soured in 2006 after Medel testified against a man named

Manny Benavidez, who had previously threatened to kill Medel multiple times and eventually gouged out Medel's eye with his thumb.

On December 19, 2012, Dominguez shoveled snow from his property onto Medel's driveway. Medel asked Dominguez about the snow and pulled out brass knuckles. In response, Dominguez picked up a flower pot and said he would break it over Medel's head. Dominguez then told Medel that "he was going to get a screwdriver and shove it in [Medel's] right eye and blind [him] like Manny Benavidez did, and that he was going to get a gun and shoot [Medel] in [his] right eye too." Report of Proceedings (RP) at 220. Dominguez also told Medel he was going to kill him.

On June 5, 2013, Medel was barbequing in his front yard with his family. Medel called the police to report that Dominguez was driving too fast through the neighborhood and was also driving without a license. Later on in the evening, Dominguez's Jeep was driven by Medel's house. Dominguez's girlfriend was driving. Dominguez hung out of the passenger side window and yelled that he was going to kill Medel, called Medel a "snitch," and said he was going to "blast" him. RP at 217. Dominguez repeated these statements a few times.

The Jeep pulled into Dominguez's driveway, which was adjacent to Medel's house. Dominguez got out of the Jeep and said, "I'm going to beat your fucking ass, you

2

fucking snitch." RP at 217. Dominguez continued to scream, cuss, and act aggressively, and then approached Medel's house. Dominguez began to walk through the bushes separating their properties, but a woman stepped in front of Dominguez and physically pushed him back before he crossed onto Medel's property.

After the woman pushed Dominguez back to his own property, Dominguez continued to yell that Medel was a "snitch," that he was going to "blast" him, and that he would "fuck [them] all up." RP at 218, 242-43. Medel called the police, and both sides went inside their respective houses. Officer Juan Serrato later arrived and investigated. Dominguez had surveillance footage of the incident, which Officer Serrato viewed.

The State charged Dominguez with felony harassment for the June 5, 2013 incident. At trial, the State questioned Medel about the 2006 incident involving Manny Benavidez. Dominguez objected to its relevance. The State argued this evidence was relevant to show that Medel's fear that Dominguez would act on his threats was reasonable, given that Dominguez's threats referenced the 2006 eye gouging incident. The trial court acknowledged the evidence's relevance, but excluded it under ER 403.

Later, during the State's case in chief, the State proffered 12 police reports describing prior altercations between Dominguez and Medel, which the State had not previously provided. Dominguez moved for a mistrial on the grounds that defense

3

counsel would be unable to provide effective assistance in light of this new discovery. The trial court granted Dominguez's motion and declared a mistrial.

Before the second trial, Dominguez moved in limine to exclude evidence relating to his December 19, 2012 threats against Medel, arguing these prior threats were inadmissible under ER 404(b). The State argued this evidence was admissible under ER 404(b) because it was relevant to show Medel reasonably feared that Dominguez would carry out his June 5, 2013 threats. The State argued that Manny Benavidez had threatened Medel before gouging out his eye, and that Medel could have feared Dominguez's threats would follow the same pattern. Dominguez asked the court to exclude evidence relating to his own prior threats, but never asked the court to exclude evidence relating to the eye gouging incident. The trial court conducted an ER 404(b) analysis and admitted the evidence of Dominguez's December 19, 2012 threats against Medel.

The second trial commenced. Medel testified that in 2006, Benavidez gouged out his eye. Medel testified that Benavidez had threatened to kill him multiple times before Benavidez gouged out his eye. Medel later testified that Dominguez's June 5, 2013 threats made him fear for his life because Benavidez had previously threatened to kill him before Benavidez gouged out his eye. Dominguez did not object to any of this testimony.

4

No. 32719-1-III
*State v. Dominguez*

The jury convicted Dominguez. Dominguez appealed. This court stayed this appeal pending the United States Supreme Court's decision in *Elonis v. United States*, __U.S.__, 135 S. Ct. 2001, 192 L. Ed. 2d 1 (2015), anticipating that the *Elonis* court would decide whether the true threat exception to the First Amendment to the United States Constitution requires an objective or subjective mens rea requirement for the speaker. The United States Supreme Court decided *Elonis* in June 2015 and this court lifted the stay.

This court set this case for consideration in January 2016. Several days later, this court certified *State v. Trey M.*, 186 Wn.2d 884, 383 P.3d 474 (2016), *petition for cert. filed*, No. 16-7712 (U.S. Jan. 25, 2017), a case similar to this one, to our Supreme Court on the issue of whether the United States Supreme Court's *Elonis* decision required Washington to change its construction of the harassment statute from an objective person standard to a subjective intent standard. Shortly afterward, our Supreme Court accepted certification of the *Trey M.* case. In January 2016, this court considered this case and further stayed this appeal pending our Supreme Court's *Trey M.* decision. Our Supreme Court decided *Trey M.* on October 27, 2016, and this court lifted the stay. *See Trey M.*, 186 Wn.2d 884.

5

## ANALYSIS

A.    CONSTITUTIONALITY OF HARASSMENT STATUTE

Dominguez argues Washington's harassment statute, RCW 9A.46.020, is facially

overbroad because it lacks a subjective intent requirement to exclude speakers who have

spoken idly, in hyperbole, or in jest. He also argues the statute is unconstitutionally vague

because it fails to provide adequate notice of the conduct it prohibits and allows arbitrary

and discriminatory enforcement.

RCW 9A.46.020 provides in relevant part:

(1)  A person is guilty of harassment if:
      (a)  Without lawful authority, the person knowingly threatens:
      (i)  To cause bodily injury immediately or in the future to the person
threatened or to any other person . . . [and]

. . . .

      (b)  The person by words or conduct places the person threatened in
reasonable fear that the threat will be carried out. . . .

. . . .

      [(2)](b)  A person who harasses another is guilty of a class C felony
if . . . the person harasses another person under subsection (1)(a)(i) of this
section by threatening to kill the person threatened . . . .

1.    *Overarching legal principles*

This court reviews de novo whether a statute is unconstitutionally overbroad or

vague under the First Amendment. *State v. Immelt*, 173 Wn.2d 1, 6, 267 P.3d 305 (2011).

Although statutes are generally presumed to be constitutional and the party challenging

6

the statute must prove its unconstitutionality beyond a reasonable doubt, in the First Amendment context the burden shifts and "the State usually 'bears the burden of justifying a restriction on speech.'" *Id.* (internal quotation marks omitted) (quoting *Voters Educ. Comm. v. Pub. Disclosure Comm'n*, 161 Wn.2d 470, 482, 166 P.3d 1174 (2007)).

Overbreadth doctrine creates a limited exception to the usual rule that a party "will not be heard to challenge [a] statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court." *Broadrick v. Oklahoma*, 413 U.S. 601, 610, 93 S. Ct. 2908, 37 L. Ed. 2d 830 (1973). Accordingly, Dominguez's facial challenge to the harassment statute does not require this court to address whether his actual speech was constitutionally protected. *See Immelt*, 173 Wn.2d at 7. Rather, the question is whether the statute improperly infringes on protected speech in general. *Id.*

2.     *The harassment statute is not facially overbroad*

Washington courts apply federal overbreadth analysis. *State v. McBride*, 74 Wn. App. 460, 464, 873 P.2d 589 (1994). The first step in overbreadth analysis is determining whether a statute actually criminalizes constitutionally protected speech. *Immelt*, 173 Wn.2d at 7. The second step is determining whether the statute prohibits a *substantial*

amount of that speech. *See id.* at 6, 11. Finally, even if the law prohibits a substantial amount of protected speech, it "'will be overturned only if the court is unable to place a sufficiently limiting construction on a standardless sweep of legislation.'" *Id.* at 6-7 (quoting *City of Tacoma v. Luvene*, 118 Wn.2d 826, 840, 827 P.2d 1374 (1992)).

Here, Dominguez's challenge to Washington's harassment statute does not pass the first step of overbreadth analysis—the statute does not actually implicate protected speech. Some categories of speech are unprotected by the First Amendment. *State v. Kilburn*, 151 Wn.2d 36, 42, 84 P.3d 1215 (2004). "True threats" is one of them. *Id.* at 43. A "true threat" is "'a statement made in a context or under such circumstances wherein a reasonable [speaker] would foresee that the statement would be interpreted . . . as a serious expression of intention to inflict bodily harm upon or to take the life of another person.'" *Id.* (second alteration in original) (internal quotation marks omitted) (quoting *State v. Williams*, 144 Wn.2d 197, 208-09, 26 P.3d 890 (2001)).

Because a literal reading of the harassment statute criminalizes some types of protected speech, Washington courts have remedied constitutional concerns by construing the harassment statute as criminalizing only "true threats." *Id.* Similarly, to prevent criminalizing protected speech, trial courts instruct juries that the defendant's threat must be a "true threat" as defined above. *See State v. Schaler*, 169 Wn.2d 274, 287-88, 236

8

P.3d 858 (2010); *see also State v. Johnston*, 156 Wn.2d 355, 364-65, 127 P.3d 707 (2006).

Nationwide, two different tests exist as to the mens rea requirement for a "true threat." *Kilburn*, 151 Wn.2d at 44. Under the "objective" test, the focus is on whether a reasonable speaker would foresee the listener to take his or her threat seriously. *Id.* In contrast, under the "subjective" test, the focus is on whether the speaker subjectively intended for the listener to take his or her threat seriously. *Id.*

Our Supreme Court has expressly adopted the objective test. *See Williams*, 144 Wn.2d at 207-08. Our Supreme Court has consistently reaffirmed and applied the objective test since its initial adoption. *E.g.*, *Kilburn*, 151 Wn.2d at 43; *Johnston*, 156 Wn.2d at 360; *Schaler*, 169 Wn.2d at 287. Most recently, in *Trey M.*, our Supreme Court did so again. *See Trey M.*, 186 Wn.2d at 895-904.

This court stayed these proceedings pending the United States Supreme Court's decision in *Elonis*, 135 S. Ct. 2001, anticipating that the Court would resolve whether the First Amendment requires an objective or subjective test for "true threats." In *Elonis*, the defendant was convicted under 18 U.S.C. § 875(c), a federal statute prohibiting "'any threat to injure the person of another'" made over the Internet. *Id.* at 2008. The *Elonis* court resolved the case based on its construction of 18 U.S.C. § 875(c) and determined it

was "not necessary to consider any First Amendment issues." *Id.* at 2012. In *Trey M.*, our Supreme Court subsequently held that the *Elonis* decision had no impact on Washington's objective test for "true threats" under the First Amendment because it expressly avoided any First Amendment analysis. *Trey M.*, 186 Wn.2d at 888, 899.

Nevertheless, Dominguez argues our Supreme Court has incorrectly adopted and applied the objective test. He argues the United States Supreme Court in *Virginia v. Black*, 538 U.S. 343, 123 S. Ct. 1536, 155 L. Ed. 2d 535 (2003) established a subjective test for "true threats" under the First Amendment.

Our Supreme Court in *Trey M.* expressly rejected this exact argument. The *Trey M.* court reasoned the *Black* court only engaged in a subjective intent analysis because the Virginia criminal statute at issue there *required* subjective intent—not because subjective intent was a constitutional requirement. *Trey M.*, 186 Wn.2d at 899. The *Trey M.* court further reasoned *Black* never imposed a subjective mens rea requirement in all cases. *Id.* at 900. The *Trey M.* court acknowledged a nationwide split of authority as to whether *Black* established a subjective test under the First Amendment, but expressly held the objective test remained the law in Washington notwithstanding *Black*. *Id.* at 902; *see also State v. Ballew*, 167 Wn. App. 359, 368, 272 P.3d 925 (2012) (also holding *Black* did not establish a subjective test under First Amendment).

10

Therefore, because RCW 9A.46.020 only prohibits "true threats"—which our Supreme Court has repeatedly defined as statements a reasonable speaker would foresee a listener would take seriously—and because such statements are not constitutionally protected speech, RCW 9A.46.020 does not criminalize any constitutionally protected speech. Dominguez's facial overbreadth claim fails.

3.   *The harassment statute is not facially vague*

Dominguez also contends RCW 9A.46.020 is facially vague because the lack of a subjective intent requirement forces citizens to guess whether their statements are protected. He also contends this encourages arbitrary and discriminatory enforcement.

"A law that does not reach constitutionally protected conduct and therefore satisfies the overbreadth test may nevertheless be challenged on its face as unduly vague." *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 497, 102 S. Ct. 1186, 71 L. Ed. 2d 362 (1982). A statute is unconstitutionally vague if it either (1) "does not define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is proscribed" or (2) "does not provide ascertainable standards of guilt to protect against arbitrary enforcement." *City of Spokane v. Douglass*, 115 Wn.2d 171, 178, 795 P.2d 693 (1990).

Here, an ascertainable standard allows citizens and law enforcement to understand what statements are proscribed: if a reasonable speaker would foresee that a listener would take the threat seriously, it is constitutionally unprotected and proscribed by the harassment statute. *See State v. E.J.Y.*, 113 Wn. App. 940, 951, 55 P.3d 673 (2002) (holding RCW 9A.46.020 is not unconstitutionally vague because the statute only proscribes "true threats"). Legal standards in statutes and court rulings are presumptively available to everyone. *State v. Smith*, 111 Wn.2d 1, 7, 759 P.2d 372 (1988) (holding RCW 9A.46.020 was not unconstitutionally vague because readily ascertainable sources of law defined the phrase "lawful authority"). Ample case law interprets whether speech was protected in similar instances. *E.g., State v. Hecht*, 179 Wn. App. 497, 511, 319 P.3d 836 (2014) (holding the statement "I am going to kill you" was a "true threat" because defendant could foresee the victim would take the threat seriously). Dominguez's vagueness claim fails.

B.    EVIDENCE REGARDING THE EYE GOUGING INCIDENT

Dominguez argues the evidence concerning the incident where Manny Benavidez gouged out Medel's eye was inadmissible under ER 404(b). Dominguez argues this evidence was irrelevant because the incident occurred long before he threatened Medel and was also prejudicial because he had nothing to do with the incident.

12

"[An] appellate court may refuse to review any claim of error which was not raised in the trial court." RAP 2.5(a). A timely objection "gives a trial court the opportunity to prevent or cure error," such as striking testimony or giving a curative instruction to the jury. *State v. Kirkman*, 159 Wn.2d 918, 926, 155 P.3d 125 (2007). If a defendant does not make objections during trial resembling the challenges raised on appeal, the appellate court will decline to review the alleged errors. *State v. Stenson*, 132 Wn.2d 668, 726, 940 P.2d 1239 (1997); *State v. Blake*, 172 Wn. App. 515, 530, 298 P.3d 769 (2012).

During the second trial, Medel repeatedly testified regarding the eye gouging incident. Dominguez never objected to any of this testimony. Dominguez argues he "made a standing objection to the admission of the testimony pertaining to Mr. Benavidez gouging out Mr. Medel's eye" during his motions in limine. Br. of Appellant at 17. The record demonstrates otherwise. During his motions in limine, Dominguez moved under ER 404(b) to exclude evidence relating to his December 19, 2012 threats to Medel. Although the State cited the eye gouging incident as a reason why Dominguez's prior threats were relevant, Dominguez only sought to exclude evidence relating to the threats

13

he made to Medel on December 19, 2012. He never asked the court to exclude evidence relating to the 2006 eye gouging incident between Benavidez and Medel.[1]

Accordingly, because Dominguez never objected to the eye gouging evidence before or during the trial, we conclude he failed to preserve this issue for review.

C.    SUFFICIENCY OF THE EVIDENCE

Dominguez argues the State presented insufficient evidence to prove Medel's fear of death was objectively reasonable.

In a criminal case, evidence is sufficient to convict if it permits a rational trier of fact to find the essential elements of the crime beyond a reasonable doubt. *State v. Munoz-Rivera*, 190 Wn. App. 870, 882, 361 P.3d 182 (2015). When a defendant challenges the sufficiency of the evidence, the proper inquiry is "whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). "[A]ll reasonable inferences from the evidence must be drawn in favor of

---

[1] Dominguez *did* object to testimony relating to the 2006 eye gouging incident at the first trial, which ended in a mistrial. However, this was insufficient to preserve the issue for appellate review. Judge Sperline—who did not preside over the first trial and did not know about the eye gouging incident—presided over Dominguez's retrial. Without an objection to the eye gouging evidence at the second trial, Judge Sperline did not have an opportunity to address or correct the alleged error. *See Kirkman*, 159 Wn.2d at 926.

the State and interpreted most strongly against the defendant." *Id.* Furthermore, "[a] claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *Id.*

To convict a person for felony harassment, the State must prove beyond a reasonable doubt that the defendant (1) without lawful authority, (2) knowingly threatened to kill some other person immediately or in the future, and (3) the defendant's words or conduct placed the person threatened in reasonable fear that the threat to kill would be carried out. RCW 9A.46.020(1)(a)(i), (1)(b), (2)(b)(ii); *State v. C.G.*, 150 Wn.2d 604, 607, 80 P.3d 594 (2003). Dominguez challenges only the sufficiency of the evidence in support of the last element—that his words or conduct placed Medel in reasonable fear that his threats to kill would be carried out.

An objective standard determines whether the listener's fear is reasonable. *State v. Ragin*, 94 Wn. App. 407, 411, 972 P.2d 519 (1999). The reasonableness of the person's fear depends on all the facts and circumstances. *C.G.*, 150 Wn.2d at 611. The victim's knowledge of the defendant's prior violence is relevant to this question. *Ragin*, 94 Wn. App. at 411-12. A considerable distance or some kind of physical barrier separating the antagonists does not mean the evidence is insufficient when the speaker threatens future

15

harm. *See State v. Alvarez*, 74 Wn. App. 250, 262, 872 P.2d 1123 (1994), *aff'd*, 128 Wn.2d 1, 904 P.2d 754 (1995).

Here, the evidence was sufficient for the jury to find that Medel reasonably feared that Dominguez would act on his death threats. First, Dominguez's words were accompanied by threatening conduct. Dominguez was acting "really aggressive." RP at 241. Multiple witnesses testified Dominguez went through the bushes toward Medel's property until a woman stepped in front of him and physically pushed him back.

Additionally, Dominguez previously threated to kill Medel on December 19, 2012. Several of Dominguez's prior threats—specifically, that he was going to shove a screwdriver in Medel's eye, and also shoot him in his eye—referenced the 2006 incident where Benavidez gouged out Medel's eye. Because Benavidez had similarly threatened Medel before gouging out his eye, Medel could have reasonably feared that Dominguez's threats would follow the same pattern.

Dominguez argues he and Medel had exchanged words many times, none of which resulted in physical contact. Therefore, he argues, it was reasonable for his comments to be interpreted as "'all bark and no bite.'" Br. of Appellant at 24. However, this inference goes both ways—Medel believed Dominguez *would* act on his threats because Dominguez had threatened him in the past, and Dominguez was "not going to keep on

16

saying it for nothing." RP at 220. After a conviction, this court must draw all inferences in favor of the State. *Salinas*, 119 Wn.2d at 201. Because of this deferential standard, we conclude this evidence supports the jury's finding that Medel's fear was reasonable.

Dominguez also argues his threat was an immediate threat rather than a future threat and, therefore, Medel's fear of immediate harm was unreasonable because he never actually entered Medel's property. Dominguez relies on *Austin*, which held that the defendant's statement, "let's fight," was only an immediate threat.[2] *State v. Austin*, 65 Wn. App. 759, 761, 831 P.2d 747 (1992). Even assuming Dominguez only threatened immediate harm rather than future harm, Medel's fear still was reasonable because there was not a considerable distance or barrier between Dominguez and Medel. Their properties were directly adjacent and only separated by "a few plants and things," which did not create a significant barrier. RP at 242.

Dominguez further argues there is a question as to whether he actually made the statements, given Officer Serrato's testimony that he did not hear the statements on the videotape. However, Medel and his fiancé both testified Dominguez made the statements. This court assumes the truth of that evidence. *Salinas*, 119 Wn.2d at 201.

---

[2] At the time *Austin* was decided, RCW 9A.46.020 only prohibited a person from threatening "[t]o cause bodily injury *in the future*." Former RCW 9A.46.020(1)(a)(i) (1992) (emphasis added). The legislature amended the statute in 1997 to also prohibit

17

Dominguez finally argues Officer Serrato never found any weapons. While true, Medel did not know this when Dominguez threatened to kill him. Significantly, Dominguez had previously threatened to get a gun and shoot Medel.

Drawing all reasonable inferences in favor of the State, as we must after a conviction, we conclude that the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Medel reasonably feared Dominguez would act on his death threats. Sufficient evidence supports Dominguez's felony harassment conviction.

D.   CUMULATIVE ERROR

Dominguez argues cumulative error deprived him of a fair trial. The cumulative error doctrine applies if there were several trial errors, none of which standing alone is sufficient to warrant reversal, that when combined may have denied the defendant a fair trial. *State v. Greiff*, 141 Wn.2d 910, 929, 10 P.3d 390 (2000). Because Dominguez has not demonstrated any trial errors occurred, reversal based on cumulative error is unwarranted.

---

threats of immediate harm. *See* LAWS OF 1997, ch. 105, § 1.

No. 32719-1-III
*State v. Dominguez*

Affirmed.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, A.C.J.

WE CONCUR:

_____          _____
Siddoway, J.                                    Pennell, J.